No. 24729.

Leroy Almarez and Susan Almarez *v.* Honorable
Donald A. Carpenter, District Judge for Weld County,
State of Colorado.
(477 P.2d 792)

Decided December 14, 1970.

286

JONATHON B. CHASE, DAVID C. MASTBAUM, for plaintiffs.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, ROBERT L. HOECKER, Assistant, for defendant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THIS case is before the court for a determination of two questions certified to us pursuant to C.A.R. 21.1 by the United States District Court for the District of Colorado. The questions:

1. Does C.R.S. 1963, 33-1-3, give an individual, found to be a pauper within the meaning of the statute, a right to a trial transcript without cost in order to prosecute an appeal? (33-1-3 was amended in 1965 and this opinion will refer to it in its current form.)

2. If C.R.S. 1963, 33-1-3, is found not to require that a

trial transcript without cost be provided, under such circumstances, then is C.R.S. 1963, 33-1-3, violative of art. II, § 6 of the Colorado constitution?

Both questions are answered in the negative.

Before we discuss the certified questions, a brief outline of the facts may be helpful.

On October 14, 1969, plaintiffs. Leroy and Susan Almarez, instituted suit in the District Court for Weld County, State of Colorado, in an action styled *Almarez v. Triangle Motor Company* (Civil Action No. 19724), to rescind a contract for the purchase of a used automobile. Mr. and Mrs. Almarez were allowed to proceed in forma pauperis (1965 Perm. Supp., C.R.S. 1963, 33-1-3) due to the fact that they were without resources sufficient to meet the costs of litigation. The Almarez income is derived primarily from the Weld County Department of Welfare. After trial to the court judgment was entered for the defendant.

A motion for new trial was timely filed and denied. Plaintiffs then filed a motion and affidavit in support thereof requesting that a trial transcript be furnished without cost in order to prosecute an appeal. They alleged that the free transcript was authorized by 1965 Perm. Supp., C.R.S. 1963, 33-1-3. The court denied the motion for a trial transcript without cost on the grounds that Section 33-1-3 does not so provide.

Plaintiffs filed a Writ of Error and Motion to Proceed in Forma Pauperis in the Court of Appeals of the State of Colorado on March 25, 1970 (Case No. 70-163). On the same day, the Colorado Court of Appeals granted plaintiffs' motion.

Also, on March 25, 1970, plaintiffs instituted an action styled *Almarez v. Honorable Donald A. Carpenter* (Civil Action No. C-2163) in the United States District Court of the District of Colorado. In their complaint they alleged that the interpretation of Section 33-1-3 by the district court, in refusing a trial transcript without cost, violated the due process and equal protection clauses of

the Fourteenth Amendment to the Constitution of the United States. However, here the statute is challenged only as to its constitutionality under art. II, § 6 of the constitution of Colorado.

I.

The statute which we are called upon to interpret, 1965 Perm. Supp., C.R.S. 1963, 33-1-3, reads as follows:

"Costs of poor person. — If the judge or justice of any court, including the supreme court, shall at any time be satisfied that any person is unable to prosecute or defend any civil action or special proceeding because he is a poor person and unable to pay the costs and expenses thereof, the judge or justice, in his discretion, may permit such person to commence and prosecute, or defend an action or proceeding without the payment of costs, and thereupon such person shall have all the necessary writs, process and proceedings in said court as in other cases without charge; provided, that in the event such person prosecutes or defends an action or proceeding successfully, there shall be a judgment entered in his favor for the amount of court costs which he would have incurred except for the provision of this section, and this judgment shall be first satisfied out of any moneys paid into court and such costs shall be paid into the registry of the court before any such judgment shall be satisfied of record."

From an analysis of the statute it appears that, in the first instance, whether a litigant may commence or defend an action or proceeding without the payment of costs rests within the sound judicial discretion of the judge.

The test of whether the litigant may "commence and prosecute, or defend an action or proceeding *without the payment of costs*" depends upon whether the judge is satisfied that the litigant "is a *poor person* and *unable to pay the costs and expenses thereof.*" In other words, to be entitled to a waiver of "costs" the litigant must not only be "a poor person" who is not able to pay the *costs*, but *also* is unable to pay *the expenses* of the

civil action or proceeding. The statute only permits the waiver by the judge of costs chargeable by the court. It does not authorize the payment of "expenses" such as a reporter's fees for transcribing the trial proceedings. The inability to pay *expenses* is, in effect, a test of indigency under this statute.

██ The law provides that if a litigant desires a transcript he must make his own arrangements with the reporter. *C.A.R. 10 (b)*. The preparation of a transcript by a reporter of his notes is a service which is not covered by his salary. Hence, the fees for such service are not payable to the court and the court cannot waive them.

██ There is a fundamental difference between permitting the court *to waive costs* due it and authorizing the court to order the state to assume the obligation of a litigant to a court reporter for preparing a transcript for purposes of appeal. The latter is an *expense* which is not within the contemplation of the waiver provisions of 33-1-3. *See Spain v. Murry*, 77 Colo. 197, 235 P. 338; *Ferrara v. Auric Mining Co.*, 20 Colo. App. 411, 79 P. 302; *Colorado F. & I. Co. v. Menapace*, 16 Colo. App. 200, 64 P. 584.

██ There is no language in 33-1-3 which suggests that the court may waive any fees or compensation to which the court reporter is entitled for the preparation of a transcript, nor is there any language which indicates that the court is to assume the litigant's obligation to pay the reporter for his services in preparing the transcript. We hold, therefore, that 33-1-3 does not contemplate the furnishing of a free transcript to an indigent litigant.

## II.

.The second question certified is whether 1965 Perm. Supp., C.R.S. 1963, 33-1-3, as interpreted in Part I, violates art. II, § 6 of the Colorado constitution, which provides:

"Equality of justice. — Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and

290

justice should be administered without sale, denial or delay."

■ The first clause requires that "courts of justice shall be open to every person." We do not perceive any violation of this provision by the terms of the statute. In fact, the sole and only purpose of the statute is *to aid* the indigent litigant in getting into court — in effect, *opening* the courts of justice to the poor person. As a matter of fact, we may assume that but for the waiver of the costs in the trial court, Mr. and Mrs. Almarez would not have had their day in court. Likewise, they have sought and obtained a waiver of *costs* in the Colorado Court of Appeals, by virtue of the provisions of 33-1-3, which "opens" that court to them.

The second clause requires that "a speedy remedy" be "afforded for every injury to person, property or character." The plaintiffs do not argue that the refusal of the trial court to furnish a free transcript has denied them "a speedy remedy."

■ As we understand the position of the plaintiffs, it is that the denial of their request for a free transcript denies them *any remedy* at the appellate level. We hold that such is not the case as will appear from our subsequent discussion in Part II A.

The last clause of art. II, § 6, provides that "right and justice should be administered without sale, denial or delay."

On this point plaintiffs argue that,

"* * * An indigent appellant faces an unsurmountable obstacle to meaningful appellate review if he must proceed without a trial transcript. Certainly, 'there can be no equal justice where the kind of trial a man gets depends on the amount of money he has.' *Griffin, supra,* at 19. It might also be argued that if the more affluent litigant has a greater opportunity for success in the appellate courts, justice is not being 'administered without sale.' "

■ The plaintiffs seem to equate the administration

of justice with affluence. They imply that the balance of
the scales of justice is invariably tipped by the financial
condition of the litigants. This attitude is as unfortunate
as it is unfair. If this were true, workmen would always
lose Workmen's Compensation cases, banks would in-
variably prevail against the small businessman and
taxpayers would never succeed in challenging the gov-
ernment. A cursory review of reported decisions will
dispel this theory. Many cases, in fact, are affirmed where
there is no appearance by the appellee. The profit and
loss statements and bank balances of the litigants do not
concern courts in their never-ending efforts to mete
out justice.

To suggest that there is any way, or that it is constitu-
tionally essential, to equalize the financial resources, the
competence of opposing counsel and all of the other items
that might tend to influence the ability of one side or
the other to prevail in a lawsuit is to intimate that there
is no possible way to obtain justice under our system.

Try as they may, neither the courts nor the legislatures
can devise rules to bring the parties to an absolute
status of equality before the trial starts. The legislatures
of many states have undertaken by the enactment of
laws similar to 33-1-3 to insure that indigent litigants
have proper access to our courts without the payment
of costs. Some courts, such as Colorado, under their rule-
making power have augmented the waiver of costs by
simplifying the requirements for a record.

The statute in question aids in administering
justice "without sale." Consequently, it meets the third
test of art. II, § 6.

IIA.

The contention of the plaintiffs, as noted above, is that
the denial of their request for a free transcript denies
them *any remedy* at the appellate level. This court, con-
sonant with the spirit of 33-1-3 to ease the burden on
litigants, adopted C.A.R. 10. A discussion of this rule
should dispel any implication that Colorado denies an

effective review of trial court judgments by not providing free reporters' transcripts.

The transcript, contrary to plaintiffs' contention, is not, by definition a *writ, process* or *proceeding.* It is not an absolute *necessity* in the reviewing court. A reporter's transcript is not the *only* means provided by the Colorado Appellate Rules for preserving and presenting to the appellate courts alleged error involving evidentiary or factual issues. C.A.R. 10 (a), (b), (c), (d) and (e). In fact, the rules contemplate that only such relevant portions of the trial proceedings be included in the record as may be necessary to present the issues on appeal.

Rule 10 (a) provides that the record on appeal may include "the reporter's transcript, *or such parts thereof* as provided under section (b) herein, * * *." (Emphasis added.)

Section (b): "* * * If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, he shall include in the record a transcript of all the evidence *relevant* to such finding or conclusion." (Emphasis added.)

Rule 10 (c), (d) and (e) provide the means of furnishing a record *other than by a reporter's transcript.* These provisions were promulgated specifically to reduce the cost of appellate review to the litigants and to conserve review time by the court itself.

If no report of the evidence was made at the trial, "or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection."

"If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth * * *." C.A.R. 10 (e)

In order to insure adequate consideration of any issue

involving evidentiary material, Rule 10 (e) further provides that,

"If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, or the appellate court, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted."

 By virtue of the waiver of costs provided for by 33-1-3 and the alternative methods of furnishing a trial court record provided for by C.A.R. 10, discussed above, the courts of justice, both trial and appellate, are "open" and available to the indigent litigant. There is no denial of any constitutional right embraced within the language or interpretation of art. II, § 6.

We are supported in this conclusion by the majority opinion in *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, wherein it is stated:

"We do not hold, however, that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The Supreme Court may find other means of affording adequate and effective appellate review to indigent defendants. For example, it may be that bystanders' bills of exceptions or other methods of reporting trial proceedings could be used in some cases. The Illinois Supreme Court appears to have broad power to promulgate rules of procedure and appellate practice. * * *."

We therefore hold that there is no denial of a constitutional right under art. II, § 6.