Leroy **ALMAREZ** and Susan Almarez,
Plaintiffs,

v.

Honorable Donald A. **CARPENTER**, District Judge for Weld County, State of Colorado, Defendant.

Civ. A. No. C–2163.

United States District Court,
D. Colorado.

Aug. 31, 1972.

Jonathon B. Chase, Boulder, Colo., Wilfred R. Mann, and Donald Juneau, of Colorado Rural Legal Services, Denver, Colo., for plaintiffs.

Duke W. Dunbar, Atty. Gen., Robert L. Hoecker, Asst. Atty. Gen., Denver, Colo., for defendant.

## MEMORANDUM OPINION

WINNER, District Judge.

Plaintiffs' 1969 purchase of a 1963 Ford from Triangle Motors spawned a startling amount of litigation. The Ford cost $470, plus tax and finance charges, and, claiming to have been defrauded, plaintiffs filed suit in forma pauperis in the District Court of Weld County and asked:

" . . . that the Court rescind the sale described herein and the contract described herein and restore the Plaintiffs to the status quo, pursuant to Colo.Rev.Stat. §§ 155–2–608, 155–2–711, and pray judgment against Defendant, Triangle Motor Company, in the sum of $544.00 pursuant to Colo. Rev.Stat. §§ 155–2–711, 155–2–715, 155–2–721, interest from the date of the filing of this complaint, and pray judgment against Defendant, TRIANGLE MOTOR COMPANY, in the sum of $544.00, pursuant to Colo.Rev.Stat. §§ 155–2–711, 155–2–715, 155–2–721, interest from the date of the filing of this complaint, and all costs herein expended, including expert witness fees, and for such other and further relief as the Court may deem proper."

That case was tried, and plaintiffs lost. Defendant here was the trial judge in the state court case, and plaintiffs asked him to order that because of their indigency, they receive a free reporter's transcript of the state court civil trial. Their request was refused. Next, in forma pauperis, plaintiffs appealed Judge Carpenter's decision to the Colorado Court of Appeals, and, again in forma pauperis, the same day, they filed this suit under 42 U.S.C. § 1983, saying that if indigents can't obtain a cost free reporter's transcript in a civil suit, they are being deprived of due process and equal protection of the laws. Shortly after this case was filed, the Colorado Court of Appeals stayed all proceedings in that court appeal until 60 days after this case is finally decided.

On April 27, 1970, Chief Judge Arraj, acting in accordance with Colo.App.R. 21.1, certified to the Colorado Supreme Court the following two questions:

"1. Does Colorado Rev.Stat. § 33–1–3 give an individual, found to be a pauper within the meaning of said statute, a right to a trial transcript without cost in order to prosecute an appeal?

"2. If Colo.Rev.Stat. § 33–1–3 is found not to require that a trial transcript without cost be provided, under such circumstances, then is Colo.Rev. Stat. § 33–1–3 violative of Art. II § 6 of the Colorado Constitution?"

December 16, 1970, the Colorado Supreme Court answered both of these questions in the negative in Almarez v. Carpenter, Colo., 477 P.2d 792. After the decision by the Colorado Supreme Court, on defendant's motion for summary judgment, this Court assumed [but did not find] the facts to be those most favorable to plaintiffs, and granted summary judgment in defendant's favor. On June 5, 1972, the Tenth Circuit Court of Appeals, acting on a forma pauperis appeal, reversed, saying:

"In dismissing the Civil Rights Action, the district court assumed that (1) a 'Reporter's Transcript was essential to an effective appeal,' and, (2) 'none of the available alternative methods of presenting the matter to the state appellate court would provide an equally adequate record.' We reject those assumptions. On the record before us it is impossible to determine the correctness of either.

"The judgment is reversed and remanded for further proceedings and specific findings and conclusions on the points which the trial court assumed."

Those further proceedings have been had and this memorandum opinion constitutes the specific findings and conclusions directed by the Court of Appeals. However, as a preface to those findings and conclusions, it is appropriate to mention legal theories which underlay this Court's earlier ruling.

Plaintiffs relied largely on Boddie v. Connecticut (1971) 401 U.S. 371, 91 S.

Ct. 780, 28 L.Ed.2d 113, and Lee v. Habib (1970) 137 U.S.App.D.C. 403, 424 F.2d 891. *Boddie* involved no right to appeal. The question there was the right of a plaintiff to file a divorce case in forma pauperis, and the Court limited its holding to the filing of divorce cases. The opinion concludes:

> "We do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship. The requirement that these appellants resort to the judicial process is entirely a state-created matter. Thus we hold only that a State may not, consistent with the obligations imposed on it by the Due Process Clause of the Fourteenth Amendment, pre-empt the right to dissolve this legal relationship without affording all citizens access to the means it has prescribed for doing so."

We cannot read *Boddie* to say that there is a constitutionally mandated right to a free reporter's transcript even in a divorce case, and we surely can't read it to hold that there is such a right in every civil case brought by an indigent. Of course, in fact, the Colorado trial and appellate courts, this Court, and the Tenth Circuit allowed these plaintiffs to file all of their lawsuits in forma pauperis and all *Boddie* decided was that a divorce case could be so filed in the trial court. Plaintiffs' counsel read the dictim of Judge Wright in Lee v. Habib, supra, as a holding that a free reporter's transcript is required in all civil suits brought by indigents. The case holds no such thing. Judge Wright did discuss the developing body of law inaugurated by Griffin v. Illinois (1956) 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, but he did not hold that there is any constitutional requirement for a free transcript in a civil case. He expressly refused to decide the question, and the case is a limited decision interpreting certain District of Columbia statutes. The case held only:

> ". . . we find that construing these two statutes to provide a right to a free transcript on appeal from the Court of General Sessions in a congressionally limited class of civil cases 'comports with the general objective of Congress that the procedures and rights of parties in the Court of General Sessions parallel those in the District Court as closely as practicable.' . . .

> "We hold today *only* that the United States must pay for transcripts for indigent litigants allowed to appeal in forma pauperis to the District of Columbia Court of Appeals if the trial judge or a judge of the DCCA certifies that the appeal raises a substantial question the resolution of which requires a transcript. We do not hold that every civil case will require a transcript on appeal." [Emphasis supplied.]

Colorado has no statute similar to those construed in Lee v. Habib, nor was there any certification of the substantiality of the question or of the necessity for any transcript made by or requested from the trial judge. Accordingly, except for some of the dictum in Lee v. Habib, the case does not support plaintiffs' legal theory here. But, as we shall see presently, just as Judge Wright *did not reach the constitutional questions* in Lee v. Habib, we need not and we do not reach them here because the assumptions we made in ruling on the motion for summary judgment are not and cannot be found as facts.

In the first go 'round in the state court, Judge Carpenter made findings and conclusions. Significantly, he found that the loan transaction was fully explained to plaintiffs; that they were informed that the 1963 Ford had been a police car and that it carried no guaran-

tee. In summary of more detailed findings he found:

"That the Court finds for the Defendant on all of the issues framed by the pleadings herein and particularly the issues created by the allegations of the existence of an implied warranty in the sale of the automobile, the lack of good faith in the transaction on the part of the Defendant, the existence of fraud in the transaction, the employment of deceptive sales practices by the Defendant; and the unconscionability of the transaction.

"That it is the further finding of the Court that the Plaintiffs entered into the transaction and purchased the 1963 Ford automobile after having the condition of the automobile explained to them and after being fully aware that there was no guarantee or warranty on the automobile of any kind. That the plaintiffs had explained to them all of the material elements of the contract including the financing involved and were fully aware of all of the material conditions existing in the several documents the Plaintiffs signed. . . .

"That the evidence is clear that the Defendant disclaimed any possible implied warranty by virtue of submitting to the Plaintiffs a statement disclaiming any guarantee of the car of any kind after fully explaining to the Plaintiffs the Disclaimer Statement."

Judge Carpenter denied plaintiffs' motion for a new trial which asserted:

"1. The court erred in ruling that the implied warranty of merchantability did not apply to used automobiles; that Triangle Motor Company had not breached the implied warranty of merchantability in the sale of a 1963 Ford to Leroy Almarez and Susan Almarez; that the contract was not unconscionable; that Triangle Motor Company acted in good faith, i. e. observed reasonable commercial standards and was honest in fact; that the contract of sale was not embodied in the chattel mortgage; that the representations of H. L. Dent did not create an express warranty of merchantability; that there was no fraud in the transaction; that plaintiffs did not meet their burden of proof that the 1963 Ford was substantially impaired by not showing the cost of repairs, when the uncontroverted evidence clearly indicated the automobile to be inoperative within 48 hours of delivery due to conditions existing at the time of sale.[1]

"2. The court erred in admitting evidence of a disclaimer of warranties in violation of the parol evidence rule.

"3. The court erred in refusing to admit the testimony of H. L. Dent as to his interpretation of the ambiguous disclaimer provision.

"4. The judgment is contrary to law in that Triangle Motor Company sold an automobile to plaintiffs which was substantially impaired, thereby breaching the implied warranty of merchantability; H. L. Dent represented the car to be an average 1963 Ford automobile thereby creating an express warranty, allowing plaintiffs to revoke the acceptance if the automobile was not in average condition pursuant to Colo.Rev.Stat. § 155–2–608; the surrounding circumstances indicate gross overreaching on the part of Triangle Motor Company resulting in a contract which was unconscionable as a matter of law; Triangle Motor Company did not exercise good faith as required by the Uniform Commercial Code; Triangle Motor Company acted fraudulently in the sale of the 1963 Ford to Leroy Almarez and Susan Almarez, whereby the contract should be rescinded and damages awarded to plaintiffs.

"That the court erred in ruling that the Uniform Commercial Code does not apply to the sale of used automobiles and the disclaimer relied upon by Triangle Motor Company was effective to exclude the express warranty made by H. L. Dent that the 1963

---

1. The battery was run down, or, maybe, it was worn out.

Ford was an average car in good running condition. Colo.Rev.Stat. § 155–2–316 does not permit exclusion of an express warranty of the kind created by Triangle Motor Company in the case at bar."

Judge Carpenter's findings have been summarized and plaintiffs' motion for a new trial has been quoted in full because of a provision in Colorado Rule 59 which differs from the provisions of Federal Rule 59. That provision is:

"The party claiming error in the trial of any case (with certain exceptions not here applicable) must move the trial court for a new trial as hereinabove provided, and the trial court may not dispense with the necessity for filing such a motion . . . *and only questions presented in such motion will be considered by the appellate court on review*. . . ." [Emphasis supplied.]

We know with particularity the errors assigned by plaintiffs in their motion for new trial, and we know that those are the only errors available for review by a Colorado appellate court. Those errors were assigned and the motion for new trial was argued and ruled upon before any request was made for a free reporter's transcript. A review of the new trial motion convinces that most of the errors claimed by plaintiffs were errors of law which would not require a full transcript to permit review and manifestly, any factual questions were sufficiently clear in counsels' minds and in the court's mind at the time of the new trial argument that a transcript was not needed for that argument. This we mention because of the alternative methods of providing an appellate record permitted under the Colorado Rules of Appellate Procedure. These methods were summarized by the Colorado Supreme Court in Almarez v. Carpenter, *supra,* as follows:

"The contention of the plaintiffs, as noted above, is that the denial of their request for a free transcript denies them *any remedy* at the appellate lev-

el. This court, consonant with the spirit of 33–1–3 to ease the burden on litigants, adopted C.A.R. 10.. A discussion of this rule should dispel any implication that Colorado denies an effective review of trial court judgments by not providing free reporters' transcripts.

"The transcript, contrary to plaintiffs' contention, is not, by definition a *writ, process* or *proceeding*. It is not an absolute *necessity* in the reviewing court.

"A reporter's transcript is not the *only* means provided by the Colorado Appellate Rules for preserving and presenting to the appellate courts alleged error involving evidentiary or factual issues. C.A.R. 10(a), (b), (c), (d) and (e). In fact, the rules contemplate that only such relevant portions of the trial proceedings be included in the record as may be necessary to present the issues on appeal.

"Rule 10(a) provides that the record on appeal may include 'the reporter's transcript, *or such parts thereof* as provided under section (b) herein, * * *'

"Section (b): ' * * * If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, he shall include in the record a transcript of all the evidence *relevant* to such finding or conclusion.'

"Rule 10(c), (d) and (e) provide the means of furnishing a record *other than by a reporter's transcript*. These provisions were promulgated specifically to reduce the cost of appellate review to the litigants and to conserve review time by the court itself.

"If no report of the evidence was made at the trial, 'or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection.'

" 'If any difference arises as to whether the record truly discloses

what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth * * *.' C.A.R. 10(e)." [Emphasis by the Court.]

Additionally, and importantly, C.A.R. 10(c) says that when a transcript is not available, and appellant submits a statement of the evidence or proceedings, "The statement shall be served on the appellee, who may serve objections or propose amendments thereto within 10 days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the trial court for settlement and approval and as settled and approved shall be included by the clerk of the trial court in the record on appeal."

It is implicit in plaintiffs' claims of denial of due process and of equal protection that they say that the alternative methods of obtaining appellate review are inadequate. The provisions of C.A.R. 10(c) are no innovation in the law. They stem from antiquity. C.A.R. 10(c) liberalized the provisions of former Rule 112 which permitted reporters' transcripts, (if approved by the trial judge) agreed records and agreed statements. In fact, C.A.R. 10(c) merely makes provision for the ancient bill of exceptions. This time honored bill is described in 4 Am.Jur.2d, Appeal and Error, § 417, p. 876 as:

"A bill of exceptions has been defined as a formal statement in writing of the exceptions taken to the opinion, decision, or direction of the judge, delivered during the trial of a case, setting forth the proceedings on the trial, the opinion or decision given, and the exceptions taken thereto, and sealed by the judge in testimony of its correctness. An instrument essentially similar in nature and function is known in some jurisdictions by other names, such as case made, or settled case.

"Bills of exception, though of ancient origin, are a creation of statute. Originally, under the common law, the writ of error reached only errors apparent on the record. Consequently, the rulings of the court during the progress of the trial, its instructions to the jury, and any alleged errors dependent on an examination of the evidence, were not open to review. To remedy this situation, the statute [Statute of Westminister II (13 Edw. 1)] which originated the bill of exceptions was enacted in the year 1285."

Bills of exceptions became a part of the federal judicial system pursuant to the authority of the Judiciary Act. Pomeroy's Lessee v. State Bank of Indiana (1863) 1 Wall 592, 68 U.S. 592, 17 L.Ed. 638. They were part of Colorado Law under 1963 C.R.S. 135-1-1 which incorporates into the state law [with certain exceptions] the acts of Parliament prior to the fourth year of James the First.

If C.A.R. 10(c) is lacking in due process or equal protection, F.R.A.P. 10(c) may be, because the two are word for word.[2] In fact, the Colorado Appellate Rules are patterned directly on the Federal Rules of Appellate Procedure, but it is interesting to note that the Colorado Rules retain a vestige of the bill of exceptions procedure not contained in the Federal Rules. C.A.R. 10(a) requires certification of the reporter's transcript by the trial judge, but, of course, F.R.A.P. 10(a) has no such requirement.

■ This historical and comparative discussion of C.A.R. 10 we have given simply to dispel any suggestion by plaintiffs that the procedure set out in Colorado Rule 10(c) is either a new procedure or that it is a procedure which differs from accepted appellate practice. We hold that neither C.A.R. 10 nor F.R.A.P. 10 are inherently constitutionally invalid, and, that being true, we reach the individualized facts of this case, to see if plaintiffs have demonstrated that

2. We recognize that Colorado has no statute comparable to 28 U.S.C. § 753(f), and, therefore, the questions presented may not exist under the Federal Rules.

C.A.R. 10 as applied to their case prevented them from obtaining adequate appellate review.

■ Plaintiffs have failed to show that they could not have obtained adequate appellate review under the procedure permitted by Colorado Rule 10(c). The test is whether they could have presented a "statement of the evidence or proceedings" and whether that statement, and any objections thereto, could have been settled and approved by the trial court. The test is not whether this can be done at this late date when memories have faded. As has been noted, the new trial motion was filed, argued and decided without a reporter's transcript, and there is no reason to believe, and certainly the evidence does not justify a finding, that had plaintiffs' counsel made a good faith effort to obtain a record under Rule 10(c), such a record would not have been "settled and approved" by the trial judge. Although two lawyers represented plaintiffs in the state court trial, neither took notes, and no effort to prepare a Rule 10(c) statement was made for 18 months. Therefore, on the facts of this case, we cannot find and we do not find that had counsel taken the avenues open to them, a satisfactory record could not have been obtained or that a reporter's transcript was essential to an appeal of the state court case; nor can we find, nor do we find that on the facts of this case, the alternative methods of seeking review in the state courts would not have provided an equally adequate appellate record. Plaintiffs' counsel didn't try to obtain an adequate substitute record, and we are not satisfied that their lack of effort represents anything other than an attempt to manufacture an opportunity to make their constitutional argument. Counsel's conclusionary statement at this late date is not enough—especially in light of their new trial motion and argument. Counsel should have tried when the matter was fresh in their minds—not 18 months later. Having failed to take advantage of their opportunity, we cannot find that counsel could

or could not have prepared a satisfactory Rule 10(c) record. Therefore, the constitutional question raised need not be, and really cannot be, answered in this case.

Plaintiffs' counsel stand in the shoes of counsel in Pomeroy's Lessee v. State Bank of Indiana (1863) 1 Wall 592, 68 U.S. 592, 17 L.Ed. 638. There, as here, counsel failed to perfect a bill of exceptions, and it was held:

"But when a party is dissatisfied with the decision of his cause in an inferior court, and intends to seek a revision of the law applied to the case in a superior jurisdiction, he must take care to raise the questions of law to be revised, and put the facts on the record for the information of the appellate tribunal; and if he omits to do so *in any of the methods known to the practice of such courts, he must be content to abide the consequence of his neglect or oversight.*" [Emphasis supplied.]

In the long, troubled and troublesome history of this case, the issues have wandered from those phrased in the complaint, but the issues as phrased in the pretrial order [together with our answers to those questions] are:

1. Whether an indigent has a right to a free transcript in a civil case?

We do not hold that an indigent has such a right in any civil case, [because that broad question is not before us] but, on the facts here presented, these plaintiffs have no such right under any provision of the Constitution of the United States.

2. Whether the refusal to provide an indigent with a free reporter's transcript in a civil case violates the equal protection clause of the Fourteenth Amendment?

That which we have said in answer to the first issue is equally applicable here, and we hold that the refusal to provide these plaintiffs with a free reporter's transcript, based on the record here

made, does not violate the equal protection clause.

3. Whether the provisions of Colo. App.R. 10(c) and (d) provide for a constitutionally permissible alternative method of proceeding on appeal where no reporter's transcript is available?

We certainly do not hold that either C.A.R. 10 or F.R.A.P. 10 is unconstitutional. We do hold that on the facts of this case, the alternative methods are constitutionally permissible.

4. Whether the parties made a good faith effort to obtain a satisfactory record on appeal in accordance with the provisions of Colo.App.R. 10(c) and (d)?

We find and we hold that no such effort was made by plaintiffs.

5. Whether the alternative methods set forth in Colo.App.R. 10(c) and (d) provide an equally adequate record as would exist if a reporter's transcript were provided?

The evidence does not permit a finding of and we make no finding as to whether the record would be *equally* adequate in this case or in any other case. Facts can be imagined in which the substitute record might be *equally* adequate (or even superior), and facts can be imagined in which it might not be. Where no effort was made to obtain a substitute record there is nothing on which to base a finding as to equality.

6. Whether the alternative methods set forth in Colo.App.R. 10(c) and (d) provide an adequate record as would exist if a reporter's transcript were provided?

Certainly, based on the record here made, we cannot find and we do not find that had counsel tried to obtain a substitute record, an adequate record could not have been obtained. Plaintiffs' own expert witness said no more, and the defendant established that an adequate substitute record could have been pro-

vided. In fact, Judge Carpenter testified that he would have required the reporter's notes to be read in event of disagreement between counsel. Had counsel tried and failed to obtain a record under the provisions of Rule 10(c), the question might be before us, but they didn't try. However, we think that a Rule 10(c) record could have been prepared which would have permitted full review of the alleged errors.

7. Whether the constitutional issues need be reached if in fact the parties did not make a good faith effort to obtain a satisfactory record on appeal in accordance with the provisions of Colo.App.R. 10(c) and (d)?

Those issues were reached in the summary judgment ruling, but they need not be and they are not reached now that a full trial has been held.

Other issues are listed in the pretrial order, but we have already covered them in this opinion except for the final question:

Whether this declaratory judgment action is the proper way to obtain a resolution of the underlying questions, or whether the matter should be pursued in the action pending in the Colorado Court of Appeals (Almarez v. Triangle Motor Company) and, if need there be, by certiorari to the United States Supreme Court?

We are not at all sure that it would not be more appropriate to have the case go through the state courts first, but this squabble has been in five courts already, and applying the theory that litigation should come to an end sometime, we have gone ahead and decided the questions raised. We leave it to an appellate court to ship the case back to a state court again if that is where it really belongs.

A declaratory judgment shall be entered declaring that based upon the facts and circumstances of this case as found by the Court, the refusal by defendant to provide plaintiffs with a free

reporter's transcript for the appeal of their state court action deprived plaintiffs of no right guaranteed them by the Constitution of the United States.