Vernon VANCE, Plaintiff–Appellant,

v.

DISTRICT COURT OF FREMONT COUNTY, Defendant–Appellee.

No. 94CA1048.

Colorado Court of Appeals, Div. I.

Nov. 24, 1995.

Vernon Vance, Pro Se.

No Appearance for Defendant–Appellee.

Opinion by Judge PLANK.

Plaintiff, Vernon Vance, appeals the trial court's dismissal of his complaint against defendants, Colorado Department of Corrections; Mark McGoss, Warden of the Arrowhead Correctional Center; Tony D. Reid, Acting Deputy Warden of the Arrowhead Correctional Center; and Warren Fox, Disciplinary Hearing Officer of the Arrowhead Correctional Center, for failure to pay the district court filing fee. We reverse the judgment of dismissal and the order denying plaintiff's motion for leave to proceed *in forma pauperis*, and remand the matter to the trial court for further proceedings.

Plaintiff, an inmate of the Centennial Correctional Facility, was charged with a disciplinary rule violation in September 1993. Plaintiff's administrative appeal became final on November 15. On December 2, 1993, plaintiff filed a C.R.C.P. 106(a)(4) complaint in the district court seeking review of a disciplinary action taken against him by defendants. Plaintiff also filed a motion for leave to proceed *in forma pauperis*, supported by an affidavit of indigency.

Upon addressing defendant's motion, the trial court determined it did not have sufficient information to rule on the motion and ordered plaintiff to provide a statement of his inmate bank account from the period of November 3 through December 2, 1993. That statement showed he had withdrawn funds for purchases at the prison canteen in the weeks prior to the filing of his complaint. The trial court then ordered plaintiff to provide the court with an itemization of his expenditures at the prison canteen.

After receipt of a list of plaintiff's canteen expenditures, the trial court denied plaintiff's

motion for leave to proceed *in forma pauperis* and ordered him to pay the $80 court filing fee. Plaintiff failed to pay the fee and the district court dismissed his complaint, finding that in the three weeks immediately prior to filing his complaint, plaintiff had made discretionary canteen purchases totalling approximately $96. Thus, noting that plaintiff has no expenses for food, housing, transportation, or health care, the trial court concluded that plaintiff would have had sufficient assets to pay the $80 filing fee if he had not made these purchases. The court concluded that plaintiff should not be relieved of his obligation to pay the filing fee because he chose to spend his assets on discretionary items.

## I.

■ Plaintiff first contends it was error for the trial court to look beyond the face of his financial affidavit and to consider his expenditures. We disagree.

The trial court may waive a litigant's filing fees pursuant to § 13–16–103, C.R.S. (1995 Cum.Supp.), which provides in pertinent part:

If the judge or justice of any court, including the supreme court, is at any time satisfied that any person is unable to prosecute or defend any civil action or special proceeding because he is a poor person and unable to pay the costs and expenses thereof, the judge or justice, in his discretion, may permit such person to commence and prosecute or defend an action or proceeding without the payment of costs.

■ In order to determine whether to permit a person to proceed under this statute without payment of costs, the trial court may order the production of those documents and evidence it deems necessary to resolve the issues. Specifically, the trial court may consider that person's complete financial condition, including the timing and nature of the spending in the weeks immediately preceding commencing the action.

## II.

■ Plaintiff next contends that the trial court abused its discretion in denying his motion to proceed *in forma pauperis*. We agree.

■ The decision whether a litigant may commence an action without payment of costs rests within the sound discretion of the trial court and is reviewable only for abuse of discretion. *Almarez v. Carpenter,* 173 Colo. 284, 477 P.2d 792 (1970). Abuse of discretion "is a legal term reflecting the opinion of an appellate court that the trial court committed an error of law in the circumstances." *Cook v. District Court,* 670 P.2d 758, 761 (Colo. 1983).

■ If the record does not support a trial court's finding that a litigant is not indigent, reversal is appropriate. *Medina v. District Court,* 177 Colo. 185, 493 P.2d 367 (1972).

▪■ Under § 13–16–103, whether a litigant may prosecute a civil action without the payment of costs depends upon whether the court is satisfied that the litigant is "a poor person and unable to pay the costs and expenses" of suit. *See Almarez v. Carpenter, supra.* However, an individual need not be absolutely destitute to qualify as a "poor person." *See Hardy v. United States,* 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964) (addressing indigency determination for purposes of appointing counsel in criminal cases).

Here, the record reveals that plaintiff had less than $80 in his inmate account when he filed his complaint. Further, on November 15, the day on which the period for filing his C.R.C.P. 106(a)(4) action began to run, plaintiff had $38.63 in his account. Between that day and the day he filed the complaint, he received an additional $40. Thus, at no time during the relevant period did he have $80 available for a filing fee. His expenditures for necessities, such as personal hygiene items, postage and telephone calls, totalled $28.87, leaving him with far less than was needed for the filing fee.

■ The trial court computed its figures using November 3 as a starting point, thirty

days prior to the actual filing. Even if we were to hold that plaintiff had to start saving on that date, he still lacked the requisite funds. On November 3, his balance was $28.06. If he spent nothing until he filed his action in district court, his wages of $5.25 per month plus other funds received would have resulted in a balance of $105.93 on December 2. However, between November 3 and December 2, plaintiff spent $44.57 on necessities. Thus, on December 2, he had a total of $61.36 in his account, which does not cover the filing fee.

We decline to require that a prisoner must develop a savings plan for the possibility that during that person's incarceration he or she will have to file a lawsuit. Prisoners need not deprive themselves of the small amenities of life which they are allowed to acquire in prison in order to proceed *in forma pauperis*. *See Souder v. McGuire*, 516 F.2d 820 (3rd Cir.1975); *see also In re Smith*, 600 F.2d 714 (8th Cir.1979).

Thus, these circumstances establish plaintiff's indigency as a matter of law. The finding by the trial court to the contrary is not supported by the record. *See Medina v. District Court, supra.*

We note that since the filing of this action, the General Assembly has adopted § 13–17.5–103, C.R.S. (1995 Cum.Supp.), effective July 1, 1995, which states:

> Any inmate who files a motion to proceed as a poor person, pursuant to section 13–16–103, in a state civil action against any public defendant shall attach to the motion copies of all inmate account records held by the detaining facility and copies of all transactions concerning the account made for the month in which the complaint is filed and eleven months before the state civil action is filed. If the inmate account demonstrates that the inmate has, or had during the time period that is reviewed pursuant to this section, sufficient funds to pay the costs of filing and service of process, the motion to proceed as a poor person shall be denied.

This section is not pertinent here as it was not in effect when these proceedings were commenced.

## III.

Finally, as plaintiff did not raise the issue of partial payment in the trial court, we do not address it here.

Accordingly, the judgment of dismissal and the order denying plaintiff's motion for leave to proceed *in forma pauperis* are reversed, and the cause is remanded for further proceedings in accordance with this opinion.

TAUBMAN, J., concurs.

METZGER, J., dissents.

JUDGE METZGER, dissenting.

Because, in my view, the trial court did not abuse its discretion in dismissing plaintiff's complaint, I respectfully dissent from part II of the majority's opinion.

On September 18, 1993, plaintiff was charged with assault of several Department of Corrections staff persons. He was found guilty at a disciplinary hearing held and a sanction was imposed. Internal administrative appeal procedures resulted in an affirmance of the decision on November 15, 1993.

Plaintiff filed this action on December 3, 1993, and attached an affidavit of indigency in support of his request to proceed *in forma pauperis*.

Thereafter, the trial court ordered that plaintiff file a statement reflecting the balance of his inmate account between November 3 and December 3, 1993. Plaintiff sent a printout showing credits of $70 in money orders and $8.12 in payroll. Debits totalled $106.07 and, as of December 2, 1993, according to the Department of Corrections, plaintiff had an account balance of $56.96.

Thereafter, the court then ordered that plaintiff provide an itemization of his canteen expenses for November 9, November 16, and November 30, 1993. That itemization showed that plaintiff had spent $10 for coffee, $15.20 for cigarettes or related tobacco items, $15 for telephone transfers, $8.70 for stamps, $19.40 for snack foods, and $14.50 for personal hygiene items.

The trial court then found that plaintiff, who had "no expenses for food, housing, transportation or health care," did have "sufficient funds available to him, absent canteen expenditures, which would have enabled him to pay the $80.00 filing fee." Accordingly, it ordered plaintiff to pay the filing fee within 30 days or it would dismiss the case. Pursuant to this order, two months later, the trial court dismissed the action.

Since plaintiff in this C.R.C.P. 106(a)(4) action is seeking review of an administrative determination, the case is civil not criminal. Thereafter, plaintiff does not have many of the constitutional rights attendant to a criminal proceeding. However, § 13–16–103, C.R.S. (1995 Cum.Supp.) does authorize the trial court, in its discretion, to permit him to "commence and prosecute [the] action or proceeding without the payment of costs."

Because the determination of inability to pay is, at its core, a factual one, it is difficult to create a bright-line rule. Indeed, as noted in *Medina v. District Court*, 189 Colo. 516, 543 P.2d 62 (1975), a finding of indigency for one purpose does not render a defendant indigent for all purposes.

The Colorado statute is analogous to 28 U.S.C. § 1915 (1976), which permits federal courts to authorize "commencement, prosecution, or defense of any suit, action, or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs ... by a person who makes affidavit that is unable to pay such costs or give security therefor." Thus, cases interpreting the federal law are helpful to determine the issue here.

The leading case discussing the definition of "poor person" is *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948). There, the Supreme Court noted that an *in forma pauperis* affidavit must be made under penalty of perjury. "This constitutes a sanction important in protection of the public against false or fraudulent invocation of the statute's benefits." *Adkins v. E.I. DuPont de Nemours & Co., supra* 335 U.S. at 338, 69 S.Ct. at 89, 93 L.Ed. at 48. Here, plaintiff's statements in

his *in forma pauperis* affidavit are inconsistent with the entries in his present account.

He averred that he has received "no monies" from "business, profession, self-employment, rent payment, interest, dividend, annuity, life-insurance payment, social security, Veteran's Administration, disability pensions, Workers' Compensation, employment benefits, gifts, or inheritances." Yet, his inmate bank account shows that he received a $30 postal money order on November 9, 1993, one for $10 on November 23, 1993, and another for $30 on November 24, 1994.

Plaintiff's affidavit also averred that "the monies on deposit in my prison account are used to purchase personal hygiene items and clothing not provided in the course of my incarceration." Yet, of the more than $80 plaintiff spent between November 3 and December 3, 1993, only $14.50 was for personal hygiene items and none was for clothing.

In light of these discrepancies between the affidavit and the account statement, I believe the trial court acted well within its discretion in rejecting plaintiff's assertions of poverty.

Moreover, I disagree with the majority's restrictive definition of "poverty" that it applies to this case. The majority relies on Justice Goldberg's concurring opinion in *Hardy v. United States*, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964) for the proposition that an individual does not need to be absolutely destitute to qualify as a "poor person." While I do not disagree with that concept, I would find the explanation of "poverty" entitling one to a waiver of fees or costs in *Rowland v. California Men's Colony*, 506 U.S. 194, ——, 113 S.Ct. 716, 722, 121 L.Ed.2d 656, 667 (1993) to be more useful here.

There the Court said:

Poverty, in its primary sense, is a human condition, to be '[w]anting in material riches or goods; lacking in the comforts of life; needy,' Webster's New International Dictionary 1919 (2d ed 1942) and it was in just such distinctly human terms that this Court had established the standard of eli-

gibility long before Congress considered extending in forma pauperis treatment from 'citizens' to 'persons.' As we first said in 1949, '[w]e think an affidavit is sufficient which states that one cannot because of his property 'pay or give security for the costs ... and still be able to provide' for himself and his dependents 'with the necessities of life.' *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43, 49, 11 A.L.R.2d 599.

Applying this definition of poverty to the facts, I consider the trial court's conclusion to be fully supported by the record.

Plaintiff's financial transactions can be summarized as follows. On November 3, he had a balance of $30.31. Adding the $70.00 in money orders he received and $5.62 in payroll, he would have had $105.93 in his account had he spent nothing at the canteen. Debiting $14.50 for personal hygiene items, his balance would have been $91.43, more than enough to pay the filing fee.

Plaintiff is an inmate in a Colorado correctional facility; thus, his "necessities of life" are provided by the taxpayers of this state. And, while I do not begrudge an inmate's wish to enrich his spartan existence by his commissary purchases, I reject the view that the law should allow him or her to bring a discretionary, civil action for free because of that fact.

Consequently, because the record supports the trial court's findings of fact and, because in my view, the trial court correctly applied the law, I would affirm. Indeed, the trial court said it most succinctly in its order of dismissal:

No persons should be denied access to the courts due to an inability to pay the filing fee. However, if an individual is anticipating filing an action, and he chooses to spend his resources on snacks rather than the filing fee, then that individual should not be relieved of the costs inherent in seeking relief from the courts. Plaintiff's purchases reflect a different priority for the use of his money not an inability to pay.