## LOTHROP v. ROBERTS.

1. WITNESSES — CROSS-EXAMINATION OF.— In order that a party may have the benefit of the testimony of a witness given in his direct examination, it is essential that the party against whom the testimony is introduced should be allowed to cross-examine for the purpose of testing the accuracy and credibility of the witness; and prejudice will generally be presumed, where such right is denied.

2. EVIDENCE — SHOULD BE ADMITTED WHEN.— It is the policy of the law to admit evidence unless a valid objection to it is clearly shown. Where no specific objection is interposed, the rule is that the evidence should be admitted, if it is competent upon any possible circumstances of the case.

3. WITNESS — EVIDENCE TENDING TO CRIMINATE.— The objection that the answer, if made, may tend to criminate the witness can only be made by the witness himself. It is not such an objection as counsel may take advantage of, to exclude testimony.

4. AFTER ACQUITTAL UPON THE CRIMINAL CHARGE.— After an acquittal upon the criminal charge it is too late for the witness to refuse to answer questions on the ground that his answer may tend to criminate himself.

5. PROMISSORY NOTES — DENIAL UNDER OATH.— Where the execution of a promissory note is denied in the answer under oath, it is error to admit the note until some proof of its execution is given, but if the evidence be afterwards supplied, the error may be cured.

*Appeal from Superior Court of Denver.*

APPELLEE as plaintiff instituted this action against Charles F. Cook, Charles H. Scott and Wilbur C. Lothrop as defendants. The suit was originally brought upon two promissory notes, but prosecuted upon one only, to which the names of the defendants appear as joint makers. Neither Cook nor Scott made defense. Lothrop appeared and filed a sworn answer, in which he denied the execution of the note, and charged that the signature of his name thereto was not genuine, but a forgery. A replication was thereafter filed, but it is not necessary to state this pleading further than to say that in effect it is no more than reiteration of the allegations of the complaint. The cause was tried to the court without a jury, and a judgment rendered against Lothrop, from which this appeal was taken.

Mr. WILLIAM B. MILLS, for appellant.

Mr. S. P. ROSE and Mr. MILTON G. CAGE, for appellee.

MR. JUSTICE HAYT delivered the opinion of the court.

The facts in this case upon which a right of recovery is based are peculiar. It is not claimed that Lothrop himself signed the note in question, or that he received any benefit therefrom, but it is claimed that Scott signed Lothrop's name, and that he was authorized so to do. Both Scott and Lothrop appeared and testified, Scott swearing that he had authority to sign, and Lothrop emphatically denying such authority. In support of Scott's evidence it was shown that he and Lothrop were at the date of the making of the note, and for some time subsequent and prior thereto had been, warm personal and political friends; that Scott had been elected to a lucrative position, succeeding appellant as county clerk and recorder of Arapahoe county, and that Lothrop apparently had the utmost confidence in the integrity, ability and honesty of Scott. In reference to his authority to sign Lothrop's name, Scott testified: "I had a sort of an understanding with Mr. Lothrop that, if I got into very close quarters, I could sign his name until the emergency was over," and that, in pursuance of such authority, he had signed the notes in suit and others, aggregating a large amount. Three other witnesses testified to matters strongly tending to corroborate this claim; others, however, testified to statements made by Scott out of court in corroboration of Lothrop's position. In this state of the record we should certainly not feel at liberty to substitute the judgment of this court, on the weight of the evidence, for that of the trial court with its superior advantages for arriving at the truth, growing out of the fact that the living witnesses appeared and testified before it. There are no findings of law distinct from the findings of fact upon which error could have been predicated, and, had no substantial error been committed to Lothrop's prej-

udice in its ruling upon the rejection and the admission of evidence, the judgment of the superior court would not be disturbed. There is, however, such manifest error in its ruling in this regard that the judgment cannot be allowed to stand. These errors were in refusing to permit pertinent and proper questions to be put to Scott upon cross-examination by counsel for appellant.

In view of the nature of the issues and the character of Scott's evidence, the fullest latitude consistent with good practice should have been allowed counsel upon his cross-examination. In order that a party may have the benefit of the testimony given by a witness in his direct examination, it is essential that the party against whom the testimony is introduced should be allowed to cross-examine for the purpose of testing the accuracy or affecting the credibility of the witness, and prejudice will generally be presumed where such right is denied. Scott, in his testimony in chief, claimed that he was authorized to sign Lothrop's name to the note in suit, and it was certainly competent upon cross-examination to show that he had made statements out of court inconsistent with sworn evidence.

Scott testified to having had several conversations with appellant in reference to the matter. One of these conversations occurred in Mr. Lothrop's office upon the evening preceding the arrest of Scott upon the charge of forgery preferred against him by Mr. Lothrop. The place of another of these conversations was located at Scott's office in the court-house; time, about one week preceding the meeting of the republican convention for Arapahoe county in 1885. In reference to these conversations the following questions were propounded to the witness upon cross-examination:

Q. "Did you at that time, and during your conversation on the evening preceding your arrest, ask Mr. Lothrop to take charge of the office and the receipts, and manage so that these notes should be paid, and not to make any exposure; that that would ruin you, or words to that effect?"

To which question counsel for plaintiff objected, as not being cross-examination; and the court sustained the objection and excluded the evidence, and counsel for defendant Lothrop, in due time and manner, excepted.

General objections were also made and sustained to each of the following questions, the evidence excluded and similar exceptions reserved:

Q. "Did you not, on account of the exposure and the consequences of it, threaten to take your own life?"

Q. "Were you not considering, at that time, the advisability of pleading guilty to one of the charges of forgery and submitting to a sentence on that, with a view to having the others *nollied* and subsequently obtaining pardon?"

Q. "Did you not in that conversation admit that you had signed his name to very many notes?" A. "I had signed his name to several notes."

Q. "Did you say to Mr. Benedict, after the matter as to whether you should plead guilty or not had been discussed, that you didn't know whether that were best or not, but you would take time to consider?"

Q. "Wasn't this question asked you substantially at that time, on that occasion, at that place: 'You are charged with having signed Mr. Lothrop's name to these papers; what is there about it?' And did you not answer: 'I cannot swear to a lie about it; it is substantially true?'"

A number of questions of the same nature were propounded to the witness to which similar objections were sustained, and the evidence excluded.

It is the policy of the law to admit evidence, unless a valid objection to it is clearly shown. Here, no specific objections were interposed, and the rule in such cases is that the evidence should be admitted if it is competent under any possible circumstances of the case. The questions were competent as tending to test the credibility of the witness, and induce him to admit, if possible, that he had made statements of the very matters in issue different from those made by him while upon the witness stand. Thompson on Trials, secs. 406, 677.

We are not advised as to the reason for excluding this evidence. If it was because it might tend to criminate the witness and expose him to punishment, two answers are obvious:

1st. The privilege can only be claimed by the witness himself.

2d. Scott had at the time of the trial already been acquitted of the criminal charge.

Appellant was entitled to have these questions answered, and the answers considered by the court in forming its conclusions. The evidence having been improperly excluded it must be presumed that Lothrop was prejudiced thereby.

The court also erred in admitting in evidence against objection the note sued upon, without some preliminary proof tending to show its due execution. The answer denying the execution of the note, being under oath, proof of execution was necessary before the note was properly admissible. As evidence upon this point was afterwards supplied, the error in this regard was cured. For the reasons stated the judgment must be reversed and the cause remanded.

*Reversed.*

CHIEF JUSTICE HELM (*dissenting*). That counsel for the parties attach little importance to the rulings of the court excluding testimony of Scott on cross-examination is shown by the fact that the subject receives only a passing reference in one of the briefs, while assignments of error relating to other matters were thoroughly and ably discussed both in printed and oral arguments. The cross-examination of this witness was exhaustive, and the matters to which the rejected questions relate were in the main elsewhere during such cross-examination fairly and fully covered by his testimony. In my judgment, upon consideration of the entire record, the alleged errors in this regard are not of sufficient importance to justify a reversal. I am of the opinion, therefore, that appellant is not entitled to a new trial upon the grounds stated by my associates.

*Reversed.*

ON PETITION FOR REHEARING.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The burden of the petition for a rehearing is to the effect "that most of the questions which were disallowed by the court below were answered in other portions of Scott's testimony." True, the witness did testify concerning some, perhaps most, of the matters embraced in the disallowed questions. But that is not the exclusive test by which to determine whether or not the privilege of cross-examination has been fully enjoyed.

Undoubtedly the cross-examination of witnesses is subject to the reasonable control of the trial court; but the privilege is so important that it should not be interfered with except when it is being carried to an unreasonable length or otherwise abused. The record does not disclose that the questions were disallowed in this case on the ground that the cross-examination was being unreasonably extended; nor does it appear that the privilege was being in any manner abused. Hence, we must conclude that the trial court was of the opinion that the testimony sought to be elicited by the disallowed questions was wholly inadmissible for any purpose in the case. Upon no other theory could general objections to the questions have been properly sustained. See *Ward v. Wilms, ante,* p. 86, and authorities there cited.

Considering the nature of the issue, the conceded facts of the case, and the state of the trial at which the disallowed questions were propounded, it is apparent that the testimony sought to be introduced was both relevant and material. The note in suit had been given for Scott's sole benefit. He had received the whole of the money upon it. He had executed the note not only for himself but had also signed Lothrop's name to it. Lothrop had not received, nor was he to receive, any consideration whatever for the use of his name. The authority claimed by Scott was most

extraordinary. In a business or pecuniary sense a man cannot give to another greater authority than the right to sign his name without limit to commercial paper for the sole benefit of another; and yet this was what Mr. Scott by his testimony in chief had claimed Mr. Lothrop had done. The manner in which Scott had testified to this was peculiar and significant. It is unnecessary to say that the proof of such authority should be clearly established in order to warrant a court in basing a judgment upon it. We might expect that a party testifying to such a matter would be clear, positive and explicit as to the time, place, terms and circumstances under which such authority had been conferred. Instead of this, Mr. Scott testified: "I had a sort of an understanding with Mr. Lothrop that if I got into very close quarters I could sign his name until the emergency was over." So the authority at best was but "a sort of an understanding." It was upon such testimony that plaintiff was relying to charge Mr. Lothrop with liability upon the note in suit when the questions were disallowed as shown in the original opinion of the court.

For the purpose of ruling upon the admissibility of the disallowed questions the trial court should have assumed that they would be answered in the affirmative, or that, by laying the proper foundation, evidence would be introduced tending to show that the witness had made the statements attributed to him by the questions, thus affecting his credibility and weakening the force of his testimony in chief. Such was the privilege of the party conducting the cross-examination without disclosing in the presence of the witness the testimony he expected to elicit.

A brief reference to the testimony thus sought to be introduced will suffice to show its relevancy and materiality. If Scott had signed Lothrop's name with authority, why should he have feared exposure? Why should he have threatened suicide in consequence of such exposure? Why should he have considered for a moment the advisability of pleading guilty to the crime of forgery on ac-

count of such signing? Why should he have resorted to such extraordinary language in admitting the signing of Mr. Lothrop's name if he had in fact signed with authority? These were some of the questions which the defendant was entitled to have seriously considered by the trial court in weighing the evidence. The disallowance of the questions would indicate that the court considered such matters of no importance in determining the issue.

On the trial of this case, unlike the case of *Lothrop v. The Union Bank, post,* p. 257, Mr. Lothrop was sworn as a witness, and denied explicitly that he had executed the note in suit or that he had authorized Mr. Scott or any one else to execute it for him. Under such conflicting testimony it is difficult to estimate the value of cross-examination; and the most searching inquiry should have been indulged. The questions propounded, as shown by our former opinion, were proper and their disallowance was error. I am of the opinion that the judgment should be reversed and that the petition for a rehearing should be denied.

*Rehearing denied.*

Mr. Justice Hayt concurs in the conclusions.

Chief Justice Helm dissented.