## No. 23656.

### JACKIE D. SOUTHARD *v.* THE PEOPLE OF THE STATE OF COLORADO.
(483 P.2d 962)

Decided April 19, 1971.

EDWARD H. SHERMAN, Public Defender, TRUMAN E. COLES, Public Defender, GRADY BRYAN MORGAN, Assistant, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, MICHAEL T. HALEY, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE KELLEY.

THE defendant, Jackie D. Southard, a Denver police officer, was charged with and found guilty of burglary of Hatch's Card Shop, Inc., located in Bear Creek Shopping Center. The defendant has sued out a writ of error seeking reversal of the judgment rendered on the jury's verdict.

The sole issue raised by the defendant is the sufficiency of the evidence, as a matter of law, to sustain the conviction. His contentions are that the court erred in failing to grant his motion for judgment of acquittal at the conclusion of the People's case and thereafter at the conclusion of all the evidence.

Defendant's claim of insufficiency of the evidence is based upon the fact that the evidence being circumstantial was speculative. A verdict of guilty must be sustained if there is substantial evidence to support it, viewed in the light most favorable to the People. *Bennett v. People,* 155 Colo. 101, 392 P.2d 657.

The quantum of proof where guilt is based upon circumstantial evidence is the same as where it is based on direct evidence; that is, it must be sufficient to establish guilt beyond a reasonable doubt. *Corbett v. People,* 153 Colo. 457, 387 P.2d 409.

It is noted by Mr. Justice McWilliams in *Pena v. People,* 147 Colo. 253, 363 P.2d 672, that,
". . . , circumstantial evidence is not always inferior in quality nor is it necessarily relegated to a 'second rate' status. In *Martinez v. People,* 63 Colo. 347, 166 Pac. 241, we said: '* * * the evidence is, as mentioned above, circumstantial only. This fact is, of course, not sufficient to justify a reversal of the judgments as circumstantial evidence may be, and frequently is, most convincing and satisfactory. * * *' Also, in *Ruff v. People,* 78 Colo. 475, 242 Pac. 633, it is said that in any criminal case material, relevant and competent evidence sufficient to

convince the jury is necessary to sustain a conviction, 'nothing more, nothing less,' and that 'circumstantial evidence is as competent and potent in such a case as any other.' The test is still whether the facts and circumstances are of such quantity and quality as to legally justify a jury in determining guilt beyond a reasonable doubt. If such be the case, then this Court should not, indeed cannot, set aside the solemn findings of the trier of the facts."

Our review of the record discloses that the evidence was of such quality and quantity as to amply support the verdict. We, therefore, affirm the judgment of the trial court.

The testimony of the witnesses developed the following facts:

Mr. Ron Stowell, the manager of Hatch's Card Shop, Inc., located at 3100 South Sheridan in the Bear Valley Shopping Center in Denver, Colorado, was the last person to leave the shop in the evening of April 1, 1967. Prior to leaving the store, he checked and made sure that all the doors, including the storeroom door, were locked. The storeroom door was subsequently checked and found to be locked by Denver Patrolman Frank Schultz at 3:10 or 3:15 a.m. on April 2, 1967. A few minutes later the door was again checked, this time by Denver Patrolman Larry J. Driskill.

At 4:00 a.m. Officer Driskill rechecked the shopping center. As he pulled into the shopping center, he observed a patrol car with the headlights on and the driver's door open, parked in front of Hatch's store. There was no one either inside or outside the car. Officer Driskill drove around the shopping center and upon returning, observed the defendant, Southard, standing by the car. Officer Driskill asked the defendant what he was doing. The defendant replied that the storeroom door to the Hatch's store was open and that Driskill should report this to the station. The defendant further stated that

Driskill should take credit for finding the open door, since the card shop was in Driskill's territory.

Subsequently, the acting sergeant arrived at the shopping center and the three policemen entered the store. Driskill turned on the lights. Immediately, the defendant picked up and started to play a transistor radio. According to the testimony of one of the officers, they looked in an open cash register near where they had entered and commented about the amount of money. The defendant then stated that the register at the other end of the store had just as much money in it. The witness stated that the defendant's statement seemed strange inasmuch as none of the officers had yet been near that particular cash register.

The officers then called Mr. Hatch, the owner of the store, and informed him they had found the storeroom door open, but that everything seemed in place. Mr. Hatch requested that the officers lock up the store and informed them he would be down in the morning.

As the officers left the store, the defendant stated that the storeroom lock would be easy to pick. Officer Driskill then picked the lock to the storeroom door pursuant to defendant's directions.

Prior to leaving the card shop, the defendant agreed to meet Driskill for coffee around 4:30 or 5:00 a.m. at the Parker House Restaurant. When the defendant arrived, another officer was present. Southard stated that there were too many cars out of service so he would remain on patrol.

Mr. Hatch, shortly after receiving the call from the police officers, changed his mind and decided to examine the store that night. On his way to the store, Mr. Hatch observed just ahead of him at Hampden and Federal Boulevard a police cruiser. He sounded his horn to attract the officer's attention, but the patrol car continued westward toward Bear Valley at a speed in excess of 60 miles per hour. When Mr. Hatch arrived at the storeroom door to the card shop, the police car was parked

against the curb directly in front of the storeroom door. The door to the cruiser was open and the storeroom door was closed. There was no one in sight. Mr. Hatch waited a moment and then as he was getting out of his car, the defendant looked out of the storeroom door and asked who was there. Mr. Hatch identified himself. The defendant and Hatch then proceeded to examine the store.

While Mr. Hatch was in the store, he picked up the bank deposit bag and put it in his pocket. As he was leaving the shopping center, he opened the bag and discovered that the dollar bills had been taken out of the individual bags and it looked as if they had been hurriedly stuffed into the larger bag. The bills were not in the usual order of ones, fives, tens, and twenties, and Mr. Hatch knew someone had tampered with the money. Mr. Hatch reported these events to the police.

The defendant returned to the police station. When he arrived, he said that he was in trouble and asked one of the officers to help him save his job. When asked what he meant, the defendant replied, "All I went back after was that radio." The officer asked the defendant what made him risk everything for a cheap radio, and the defendant replied, "Oh, I guess I just made a mistake."

The facts and circumstances and the inferences deducible therefrom are of such quantity and quality as to legally justify the jury in returning the guilty verdict.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE DAY and MR. JUSTICE LEE concur.