## No. 24855

### The People of the State of Colorado v. Arthur Nickolas Scheidt
(513 P.2d 446)

Decided August 27, 1973.

378

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, John E. Bush, Assistant, Tennyson W. Grebenar, Assistant, for plaintiff-appellee.

H. E. Carleno, David Senseney, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Arthur Nickolas Scheidt claims that he is entitled to a new trial because numerous errors were committed during his trial. For the reasons set forth in this opinion, we affirm the judgment of conviction.

The record discloses that Scheidt and a companion, Robert Knapp, entered a Denver grocery store. A scuffle which involved Scheidt, Knapp, and the proprietor ended with an exchange of gunfire between the proprietor and Knapp. Scheidt and Knapp ran from the store and drove away in a 1958 Ford stationwagon. The proprietor of the store died as a result of the bullet wounds which he suffered during the exchange of gunfire.

The district attorney filed an information charging Scheidt and Knapp with felony-murder. C.R.S. 1963, 40-2-3 (1). In a separate trial, Knapp was convicted of first-degree murder. *People v. Knapp,* 180 Colo. 281, 505 P.2d 7 (1973). Scheidt originally plead not guilty and not guilty by reason of insanity. The insanity plea was withdrawn by Scheidt after the court-appointed psychiatrist, Dr. Robert Cohen, filed his report expressing the opinion that Scheidt was sane. The jury

convicted Scheidt of first-degree murder and recommended life imprisonment.

The following points which Scheidt has raised on this appeal merit discussion:

## I.
### Sufficiency of the Evidence

Scheidt contends that the trial court erred at the conclusion of the People's case in denying his motion for judgment of acquittal on the ground that the evidence was insufficient to sustain a felony-murder conviction. In support of that contention, the defendant argues that each element of the underlying felony must be proven beyond a reasonable doubt in order to sustain a felony-murder conviction. He claims that the People, in relying upon the crime of robbery to support the felony-murder charge, failed to present evidence of a specific intent to steal. *See* C.R.S. 1963, 40-5-1; *People v. Gallegos,* 130 Colo. 232, 274 P.2d 608 (1954); and *United States v. Nedley,* 255 F.2d 350 (3d Cir. 1958).

When reviewing the sufficiency of the evidence to sustain a conviction, it must be examined in the light most favorable to the prosecution. *People v. Vigil,* 180 Colo. 104, 502 P.2d 418 (1972); *Southard v. People,* 174 Colo. 324, 483 P.2d 962 (1971); *Bennett v. People,* 155 Colo. 101, 392 P.2d 657 (1964). Judged by this standard, Scheidt's claim that the evidence is insufficient to prove specific intent must fail. The People presented witnesses who testified that Scheidt told them that "he had gone in to rob the store," because "he needed some money to get [a] girl out of jail . . . ." These admissions by the defendant disclose an intent to deprive the grocery store proprietor of the use and benefit of his property.

The defendant's mother testified in his behalf and voiced the opinion that Scheidt did not have the requisite mental capacity to form an intent to steal during his younger years. In relating an incident which occurred when her son, at age thirteen, ran away from home and was found in a hobby shop, she said:

"As a matter of fact, he hadn't broken in the store, but

somehow or other he had found a key to the store that was left outside, unlocked the door, and went in, more for shelter than anything else."

In response, the People introduced rebuttal evidence through the testimony of the police officer who arrested Scheidt inside the hobby shop which contradicted the mother's version of the events and tended to show that Scheidt could form a specific intent at that time. In addition, the court-appointed psychiatrist, Dr. Robert Cohen, was called as a rebuttal witness by the People and expressed the opinion that Scheidt, at the time of his examination, possessed the mental capacity to form a specific intent.[1]

There is no question that the issue of specific intent was thoroughly presented. Upon the evidence introduced reasonable men could differ, and the question was, therefore, properly left for the jury's determination.

II.

Evidence of Other Crimes

As another ground for reversal, Scheidt contends that the trial court erred in admitting testimony by one of the People's witnesses that the defendant had committed other similar offenses. The testimony in question is:

"Q. Please relate the conversation in as much detail as you remember.

"A. Well, he said that he went in and that he had gone in to rob the store, to get bail for a girl, *and he had robbed other stores,* and that he — that he had gone in and that he — he had a gun and he shot the man twice." [Emphasis added.]

---

[1] The Doctor-Patient privilege, as set forth in C.R.S. 1963, 39-8-2, was not violated by Doctor Cohen's testimony. The prosecution called him as a witness to rebut evidence introduced by Scheidt which tended to show that he was incapable of forming a specific intent. 1965 Perm. Supp., C.R.S. 1963, 39-8-2(5)(b), specifically authorizes this form of rebuttal testimony.

"Any evidence from such [psychiatric] observation and examination is admissible only on the trial of the issue of insanity, except when offered on the trial on the issue of guilt of a murder charge to rebut evidence of insanity offered by the defendant to reduce the degree of murder."

The defendant made no objection to this testimony when it was offered and did not request a limiting instruction as to its use. However, Scheidt argues that although no request was made, the court committed reversible error when it failed to issue an instruction limiting the use of the "other crimes" evidence to show plan, scheme, design, or intent. He also contends that a new trial is required because the prosecution failed to advise the court of the purpose of the "other crimes" evidence before it was introduced. *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959).

This court in the *Stull* case did indeed recognize that evidence of past crimes "has inhering in it damning innuendo likely to beget prejudice in the minds of the jurors," and formulated a procedure which should be followed when such evidence is offered by the People. We reassert the view expressed there that the better method requires that the prosecution announce its intention to offer evidence of other crimes for a limited purpose before it is introduced. Moreover, the trial court should issue a limiting instruction to the jury contemporaneously with the offering of such evidence, even though the defendant may not formally request such an instruction.

However, the manner in which the reference to other crimes surfaced in this case is not of the type which the *Stull* case disapproves. The prosecution witness made the statement while relating Scheidt's admission of the grocery store incident, she did not elaborate or make a specific point of the prior crimes, the reference was not the focus of her remarks, and most importantly, there is nothing in the record which indicates that the prosecution intended to bypass the *Stull* procedure and elicit evidence of prior crimes from the witness. Placed in that framework, we conclude that even though the reference to other crimes may have been improperly admitted, the error was not "so fundamental . . . as to seriously prejudice the basic rights of a defendant." *People v. Vigil, supra; Larkin v. People,* 177 Colo. 156, 493 P.2d 1 (1972); *Gould v. People,* 167 Colo. 113, 445 P.2d 580 (1968).

### III.
### Hearsay Evidence

As an additional ground for reversal, Scheidt argues that certain testimony of John Stettler was inadmissible hearsay. While Knapp and the defendant were inside the grocery store, but prior to the shooting, Knapp made an incriminating statement to Stettler. The statement was not made in Scheidt's presence, and he contends that the trial court erred in admitting it into evidence. We disagree.

Under Colorado law, a defendant may be charged as the principal in a criminal transaction and subsequently tried as an accessory. *Mulligan v. People,* 68 Colo. 17, 189 P. 5 (1905). When two persons are charged with the same crime, the prosecution is not required to spell out which one is the principal and which is the accessory. *Schreiner v. People,* 146 Colo. 19, 360 P.2d 443 (1960). It is ultimately the jury's responsibility to determine the specific role a defendant plays — principal or accessory. *Erwin v. People,* 126 Colo. 28, 245 P.2d 1171 (1952).

However, before a defendant may be convicted as an accessory, the jury must be convinced beyond a reasonable doubt that his accomplice, as the principal, is also guilty of the crime. In order to satisfy that burden of proof, the prosecution is allowed to introduce evidence otherwise inadmissible at the defendant-accessory's trial for the limited purpose of establishing the guilt of the absent principal. In the case before the court, Stettler's testimony of what Knapp said to him just prior to the shooting was properly introduced to establish Knapp's guilt as the principal. If a request is made for an instruction limiting the use of such evidence, the court is required to caution the jury that the evidence can be considered only to show the guilt of the principal and not that of the defendant-accessory.

The defendant failed to request a limiting instruction both at the time the evidence was introduced and at the close of the trial. Absent such a request, there was no duty on the trial court to limit the jury's consideration of Stettler's testimony. *Johnson v. People,* 174 Colo. 413, 484

P.2d 110 (1971); *People v. Vigil, supra; Stull v. People, supra.*
"[I]n the absence of [a] request for limitative instruction,
the evidence was admissible for all purposes . . . even though
it may tend to show that the defendant is guilty . . . ."
*Johnson v. People, supra.* Although the better practice would
be for the court to proceed on its own motion and issue a
limiting instruction, failure to do so is not reversible error.
*Stull v. People, supra.*

## IV.
### Refusal to Testify

Sharon Cline was an endorsed witness who allegedly drove
the get-away car the night of the robbery. At the State's
request, she was granted immunity. However, when she took
the stand, she refused to answer virtually all but the
identification questions put by the prosecutor. As a result,
the court cited her for contempt. Scheidt asserts that the
prosecutor engaged in misconduct which should result in a
new trial, because he knew that she would refuse to testify
and that by asking her questions which were left unanswered,
the prosecution would be able to place the case before the
jury using irrebuttable inferences.

The defendant places primary reliance on *DeGesual-
do v. People,* 147 Colo. 426, 364 P.2d 374 (1961). However,
that case is not in point. In *DeGesualdo,* the prosecutor
placed a witness on the stand whom he knew would refuse to
answer the questions on the grounds of the Fifth Amend-
ment privilege against self-incrimination. In such cases, he
must have a good-faith belief that the witness will testify or
else he commits prejudicial error, and the defendant will
receive a new trial. Here, however, Sharon Cline had been
granted immunity and, hence, had no Fifth Amendment
privilege. *Brown v. United States,* 359 U.S. 41, 79 S.Ct. 539,
3 L.Ed.2d 609 (1959); *Wyman v. DeGregory,* 100 N.H. 163,
121 A.2d 805 (1956); *Lothrop v. Roberts,* 16 Colo. 250, 27
P. 698 (1891).

The very foundation of the immunity statute em-
bodies a right on the part of the State to expect that a
witness granted its protection will testify. Once immunity has

been granted, the State is not required to assume that the witness will violate the law by refusing to testify. Even though Sharon Cline had repeatedly said she would not testify, the totality of the circumstances surrounding her conduct, particularly the fact that she testified freely about the same events at Knapp's trial, was sufficient to support a good-faith belief on the part of the prosecutor that once before the jury she would come forth with relevant evidence.

▆▆ After the witness was placed on the stand and it became apparent that she would not testify, the prosecutor requested the court to hold the witness in contempt. He did not continue to put forth questions to improperly develop his case before the jury. In light of the restraint exercised, we do not find that the behavior of the district attorney was prejudicial and, hence, the prosecutor's conduct does not provide grounds for a new trial in this case. *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963).

## V.
### Right of Confrontation

Scheidt contends that when Sharon Cline was removed from the stand and cited for contempt he was denied his Sixth Amendment right to confront and cross-examine the witness.

▆▆▆ However, "a defendant has no right to confront a 'witness who provides no evidence at trial.' " *United States ex rel. Meadows v. New York,* 426 F.2d 1176 (2d Cir. 1970). The purpose of the rule of confrontation and cross-examination is to prevent conviction by ex parte affidavits, to sift the conscience of the witness, and to test his recollection to see if his story is worthy of belief. *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Where the State's witness does not testify to a matter beyond her name, age, and who owned the car; that is, to a matter which has no bearing on the outcome of the case, there is nothing for the defendant to cross-examine. The policies underlying the constitutional privilege do not come into play on these facts. Hence, the defendant was not denied his Sixth Amendment right to confrontation.

## VI.
### Cumulative Error

As a final argument, Scheidt claims that while none of the irregularities or alleged errors alone may be grounds for reversal, cumulatively, they show the absence of a fair trial and require that he be granted a new trial. *Oaks v. People,* 150 Colo. 64, 371 P.2d 443 (1962). We disagree.

Although Scheidt did not receive a perfect trial, based upon the record and consideration of the issues raised on appeal, he did receive a fair trial. The law of Colorado entitles him to nothing more. *People v. Barker,* 180 Colo. 28, 501 P.2d 1041 (1972). The evidence of Scheidt's guilt is overwhelming. We do not believe that the errors which occurred could have influenced a jury, since the record eliminates any colorable claim of innocence. *See Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

Accordingly, we affirm the conviction.

MR. JUSTICE DAY, MR. JUSTICE GROVES, and MR. JUSTICE LEE do not participate.