**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Lester L. NEWTON, Defendant–
Appellant.**

No. 94CA2073.

Colorado Court of Appeals,
Div. II.

Nov. 29, 1996.

Rehearing Denied Dec. 27, 1996.

Certiorari Granted Aug. 4, 1997.

**1066**

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, M. Catherine Duba, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Gerash, Robinson & Miranda, P.C., Walter L. Gerash, Denver, for Defendant–Appellant.

Opinion by Judge CRISWELL.

Defendant, Lester L. Newton, appeals from a judgment of conviction entered on a jury verdict finding him guilty of two counts of aggravated robbery, one count of theft over $15,000, and three counts of menacing. We reverse his convictions and remand for a new trial.

In 1993, an armored truck guard was robbed while making a delivery. Eyewitnesses saw no more than three perpetrators, all of whom were masked. They were described as wearing dark sweatsuits.

After the robbery, based on witness descriptions of the perpetrators' vehicle and direction of travel, a detective later located a vehicle matching the description at a nearby apartment complex parking lot. Police then surrounded the building and began a door-to-door search.

Upon entering one apartment, the police found four people present: the defendant; the resident of the apartment, Shervin Bunch; his brother, Samuel Bunch; and the defendant's girlfriend, Evonne Cummins. At that time, defendant identified himself as Brian Brown.

Immediately before the police entered the apartment, three other people had left through a window; they tried to climb onto the roof, but were found hiding in nearby bushes. The police conducted a search of the apartment, and evidence of the robbery was found there, on the roof, and in the nearby bushes. The defendant was charged as one of the robbers.

Six days later, defendant's girlfriend made a narrative statement to a detective concerning the robbery. At the prosecution's request, she was later granted testimonial immunity.

Although the girlfriend's attorney informed the court that she would persist in exercising her Fifth Amendment privilege against self-incrimination, and although she made it clear she would continue doing so at three different hearings, the court allowed the prosecution to call her as a witness at trial. The court then allowed the prosecutor to ask the girlfriend a series of leading questions about her statement to the detective. She refused to respond to each question on the basis of her privilege. Thereafter, the court allowed the detective to testify with respect to the girlfriend's statement based on its conclusion that such statement was inconsistent with her prior testimony.

Shervin Bunch and one of the confessed robbers, who was offered leniency in exchange for his testimony, testified at trial. The confessed robber admitted his involvement, but said defendant had not been a participant.

In contrast, Shervin Bunch testified that defendant came to the apartment with three other people, all wearing black and grey sweatsuits, that Bunch entered the bedroom in which the four were present and observed lots of money, and that the defendant agreed to give him some money. However, this witness did not directly testify that defendant was involved in the robbery.

I.

Defendant asserts that the trial court erred by permitting the prosecution to call the girlfriend and to question her repeatedly in the jury's presence, knowing that she would assert her Fifth Amendment right to remain silent. The Attorney General has conceded error in this respect, and we conclude that such concession is well warranted.

■ A party may not call a witness to testify if that party knows the witness will exercise her privilege against self incrimination. *People v. Dikeman,* 192 Colo. 1, 555 P.2d 519 (1976). And, this prohibition applies whether or not the claim of privilege is proper. *State v. Corrales,* 138 Ariz. 583, 676 P.2d 615 (1983); *Hankerson v. State,* 347 So.2d 744 (Fla.Dist.Ct.App.1977); *see also People v. Scheidt,* 182 Colo. 374, 513 P.2d 446 (1973) (prosecutor's behavior not prejudicial because, although the claimed privilege was invalid, the prosecutor did not continue to put forth questions that would improperly develop his case before the jury).

The rationale for the rule is that, because of the high courtroom drama and odium surrounding a claim of privilege, questioning of a witness asserting such a claim before the jury has the effect of prejudicing the accused by creating an unfair inference of guilt. *See People v. Dikeman, supra.*

■ If the court finds the claim of privilege to be invalid, it should consider contempt penalties against the witness, rather than allowing questioning that could be prejudicial to the defendant. *People v. Poma,* 96 Mich.App. 726, 294 N.W.2d 221 (1980).

## II.

The People argue, nevertheless, that such error was not prejudicial because no inference could have been drawn from the girlfriend's refusal to testify other than that she had made the statements which the detective later detailed; that the detective's testimony was properly admitted; and that both the girlfriend's refusal to testify and the testimony of the detective were merely cumulative of other evidence. We disagree.

### A.

■ We are convinced that the girlfriend's statement to the detective was not properly admitted.

At trial, the court admitted the detective's testimony on the basis that the girlfriend's statement to him fell under the prior inconsistent statement exception to the hearsay rule. It found, in effect, that the girlfriend's refusal to answer questions at trial was inconsistent with her earlier statement to the detective.

However, because the girlfriend did not give testimony when she refused to answer the prosecutor's questions, she gave no testimony with which any prior statement could be inconsistent. *See* CRE 801(d)(1)(A); *People v. Rios,* 163 Cal.App.3d 852, 210 Cal.Rptr. 271 (1985). Hence, the trial court's ruling was erroneous.

■ The People again concede that the detective's testimony was not admissible on the basis that the trial court admitted it. However, they contend that the statement was properly received as a statement against penal interest. We are not persuaded.

■ The statement against penal interest exception to the hearsay rule, described in CRE 804(b)(3), allows an out-of-court statement to be admitted if the declarant is unavailable and the statement tends to subject the declarant to criminal liability such that a reasonable person in the declarant's position would not have made the statement unless she believed it to be true. A statement tends to subject a person to criminal liability if the statement would have been probative in a

trial against her. *People v. Moore,* 693 P.2d 388 (Colo.App.1984).

■ However, if such a statement inculpates a person other than the declarant, it must also be demonstrated, by a preponderance of the evidence, that attendant circumstances confirm the statement's trustworthiness. *People v. Moore, supra; see United States v. Katsougrakis,* 715 F.2d 769 (2d Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984).

In *Williamson v. United States,* 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), the Supreme Court recently analyzed the identical federal counterpart to CRE 804(b)(3). There, the court adopted a narrow view of the exception created by the federal rule and concluded that only those declarations within a narrative that are individually self-inculpatory are admissible under that rule. Specifically, that court determined that, when ruling on a narrative statement, such as the girlfriend's here, a trial court must not assume that a statement is self-inculpatory merely because it is part of a larger narrative. Rather, the court must analyze the admissibility of each separate remark.

The *Williamson* decision is not binding upon us because it was decided under the federal rule; that decision did not address any issue under the confrontation clause. We note, however, that its rationale has been adopted by a number of state courts. *See, e.g., State v. Matusky,* 343 Md. 467, 682 A.2d 694 (1996).

Here, the statements made by the girlfriend, all of which were made to the detective at the same session, were, in substance, as follows:

(1) On the day in question, she was present in an apartment in which Shervin Bunch was present.

(2) Initially, defendant and another person entered the apartment; they were followed by two others, who entered the apartment as Bunch was in the process of closing the door behind the defendant and the other party.

(3) All four of these individuals immediately went into the apartment's bedroom, while

she and Shervin Bunch remained in the "main area."

(4) Shervin Bunch asked her what was going on, and she told him that the defendant and the other three had just been involved in a robbery.

(5) Shervin Bunch went into the bedroom, stayed about five minutes, and then came out.

(6) When the defendant first came into the apartment, he was wearing a black-hooded sweatsuit and black sweatpants; he later came out of the bedroom wearing what she described as boxer shorts and a white T-shirt.

(7) She also recalled that the person who entered the apartment with defendant was also wearing dark sweatpants, but could not recall what the other two were wearing.

(8) Later, she took the trash out from the apartment, observed that the building was surrounded by police, and returned to the apartment where she told everyone that the building was surrounded.

(9) At that point, the defendant told everyone to "be cool" because "the cops couldn't come in."

(10) Shortly thereafter, there was a knock at the door and the persons present realized it was the police. While Shervin Bunch and some others were at the door, three of the four individuals (excluding defendant) went out of the apartment window and started running.

Applying the *Williamson* analysis to this overall narrative, we conclude that substantially none of the individual statements that were relevant to defendant's guilt constituted a statement against the girlfriend's penal interest. While the girlfriend's remark to Shervin Bunch that defendant and others had just committed a robbery might be considered against her penal interest, because it demonstrated some guilty knowledge on her part, the remainder of the remarks did little to subject the girlfriend to criminal liability and are, at best, "collaterally neutral," as described in *Williamson*.

Indeed, many of the statements are self-exculpatory, describing defendant and others as the persons committing the crimes, rather than herself. And, the mere proximity of these remarks to the single self-inculpatory remark does not increase their plausibility. *Williamson v. United States, supra.*

Further, because this statement implicated both the girlfriend and defendant, it could have been admitted only if the People proved, by a preponderance of the evidence, that other circumstances confirmed its reliability. *People v. Moore, supra.*

■ However, because the prosecution did not seek to admit any portion of the girlfriend's statement under the penal interest exception of CRE 804(b)(3), it did not argue, and the trial court did not consider, the statement's independent reliability. While the People suggest that we address this issue, we decline that invitation.

■ We generally do not address issues not presented to the trial court. *See People v. Titus*, 880 P.2d 148 (Colo.1994). Further, not only is the question of reliability a question of fact for the trial court, but the admission of the remainder of the narrative, which also indirectly implicated defendant in several respects, was, in any event, error requiring a new trial.

## B.

■ Next, the People contend that the trial court's error in allowing the prosecution to question the girlfriend was not prejudicial because her statement was merely cumulative to other evidence in the case. We are not persuaded.

As noted, there were no eyewitnesses who could identify the perpetrators of the robbery. There was, however, testimony of one of the admitted robbers who stated that the defendant took no part in the crime. And, although a portion of the girlfriend's statement, which implicated the defendant, was corroborated by Shervin Bunch, his credibility was subjected to serious attack. In addition, while the girlfriend stated that she told Shervin Bunch that the defendant and three others were just involved in a robbery, Shervin Bunch did not corroborate this statement in his testimony. Finally, during oral argu-

ment before us, the People conceded that, without the girlfriend's statement, the evidence against the defendant was not overwhelming.

Given these circumstances, we conclude that the girlfriend's appearance in front of the jury, her repeated claims of privilege, her lack of response to the questions posed by the prosecutor, and the evidence of her statements to the detective all served to give an impression of corroboration of the testimony of Shervin Bunch. Because his credibility constituted one of the important issues that the jury was required to pass upon, we cannot say that the extensive questioning of the girlfriend and the admission of the detective's testimony with respect to her statement was only harmless error.

## III.

 Finally, defendant contends that, without the detective's testimony, there was insufficient evidence to support the conviction, and therefore, he is entitled to a reversal and a dismissal of the charges, rather than a new trial. We find no merit in this contention.

The proper standard to be applied to a defendant's motion for acquittal is whether the relevant admissible evidence, "both direct and circumstantial, when viewed in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *People v. Gonzales*, 666 P.2d 123, 127 (Colo.1983).

Here, Shervin Bunch's testimony was that the defendant was one of the four men who entered the apartment after the robbery; that his clothing was similar to that described by the eyewitnesses; that he had a large amount of cash, and he agreed to give some of it to Shervin Bunch; that he lied about his identity at the time he was contacted by the police; and that he paid Shervin Bunch to lie for him. This testimony was sufficient to allow a reasonable mind to find the defendant guilty beyond a reasonable doubt. Accordingly, defendant is not entitled to a judgment of acquittal.

## IV.

Because of our disposition in this case, we need not consider the defendant's remaining contentions.

The judgment is reversed, and the cause is remanded for a new trial in accordance with the views contained in this opinion.

PLANK and KAPELKE, JJ., concur.