2014 COA 44

Wesley MARYMEE, Plaintiff–Appellant,

v.

EXECUTIVE DIRECTOR OF the COLO-
RADO DEPARTMENT OF CORREC-
TIONS and Warden of Arkansas Valley
Correctional Facility, Defendants–Ap-
pellees.

Court of Appeals No. 13CA0375

Colorado Court of Appeals,
Div. IV.

Announced April 10, 2014

Wesley Marymee, Pro Se

John W. Suthers, Attorney General, Jacquelynn N. Rich Fredericks, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees

Opinion by JUDGE BOORAS

¶ 1 Plaintiff, Wesley Marymee, an inmate in the custody of the Colorado Department of Corrections (CDOC), appeals from the district court's C.R.C.P. 106.5 judgment upholding his prison disciplinary conviction. He also appeals the order denying his motion to proceed in forma pauperis and requests reimbursement for the cost incurred for the preparation of the transcript of the administrative hearing. We affirm the judgment and order, but remand the case to the district court with directions to order the CDOC to refund the cost of the hearing transcript.

## I. Background

¶ 2 On November 30, 2011, plaintiff was employed at Correctional Industries (CI), a for-profit division of the CDOC. See §§ 17–24–101, –102, C.R.S.2013. On that day, while plaintiff was at work, he was permitted to use the restroom at approximately 3:35 p.m. After utilizing the restroom, plaintiff noticed that it was almost 3:45 p.m. and instead of returning to the work facility, he proceeded to the staging area where the inmates waited after their shift had ended to be escorted to a security checkpoint before they were released back to their cells. Chris Sanchez, the supervisor of the CI work facility, asked plaintiff whether he was ready to leave for the day. Plaintiff responded in the affirmative. Sanchez opened the secured door, escorted him to another staging area where he was patted down, and then released plaintiff through another secured door. Joshua Hughes, who was plaintiff's direct supervisor at CI on the day in question, never excused plaintiff from work.

¶ 3 Prison officials charged plaintiff with "Unauthorized Absence," which is a Class II violation under the CDOC's Code of Penal Discipline (COPD). Specifically, the notice stated that plaintiff, "[w]hile working in the CI warehouse on 9/30/11 at [approximately] [3:45 p.m.] left his assigned work area, without being properly excused by his direct supervisor." Following an evidentiary hearing, the hearing officer found plaintiff guilty of the disciplinary charge. Plaintiff filed an administrative appeal which resulted in an affirmance of the hearing officer's decision by the Administrative Head.

¶ 4 Plaintiff then filed a complaint pursuant to C.R.C.P. 106.5. The district court affirmed the hearing officer's decision finding plaintiff guilty of the disciplinary charge.

## II. Standard of Review

¶ 5 Our review in this proceeding is limited to whether prison officials exceeded their jurisdiction or abused their discretion in imposing the disciplinary sanctions against plaintiff. See Thomas v. Colo. Dep't of Corr., 117 P.3d 7, 8 (Colo.App.2004); see also C.R.C.P. 106(a)(4), 106.5(i)(2). We review de novo the district court's decision. See Thomas, 117 P.3d at 8.

## III. Motion to Proceed in Forma Pauperis

¶ 6 Plaintiff first contends that the district court abused its discretion in denying his motion to proceed in forma pauperis. We disagree.

¶ 7 Whether a litigant is indigent and thus entitled to prosecute a civil action without payment of costs, as provided in section 13–16–103, C.R.S.2013, is generally a matter committed to the discretion of the trial court. *Collins v. Jaquez*, 15 P.3d 299, 301 (Colo.App. 2000). However, in civil actions brought by prison inmates, the district court's discretion is limited by section 13–17.5–103, C.R.S.2013, one of several related statutes enacted to address inmate civil actions. *Id.*; *see also Harrison v. Wilson*, 998 P.2d 1110, 1111–12 (Colo.App.2000).

¶ 8 Section 13–17.5–103(1), C.R.S. 2013, states:

An inmate who seeks to proceed in any civil action without prepayment of fees, in addition to filing any required affidavit, shall submit a copy of the inmate's account statement for the six-month period immediately preceding the filing of the civil action, certified by an appropriate official at the detaining facility. If the inmate account demonstrates that the inmate has sufficient funds to pay the filing fee, ... the motion to proceed as a poor person *shall* be denied.

(Emphasis added.) Thus, the statute limits the trial court's discretion to determine indigency by providing that, if there are sufficient funds in the inmate account, the motion to proceed as a poor person *"shall"* be denied. *Collins*, 15 P.3d at 301–02 (emphasis in original).

¶ 9 The inmate account records submitted by plaintiff showed that over $1,000 had been deposited into his account during the six preceding months and that he had more than $475.33 in the account as late as one week before he filed his complaint. Thus, because plaintiff had sufficient funds in his account to pay the filing fee, the trial court was required to deny his motion. *See id.*

¶ 10 Plaintiff's reliance on *Vance v. District Court*, 908 P.2d 1189 (Colo.App.1995), in support of a contrary conclusion is misplaced. *See Collins*, 15 P.3d at 302. In *Vance*, the majority held that denial of an inmate's in forma pauperis motion was an abuse of discretion and, in so holding, observed that "[p]risoners need not deprive themselves of the small amenities of life which they are allowed to acquire in prison in order to proceed in forma pauperis." 908 P.2d at 1192. However, the division also expressly noted that section 13–17.5–103, which limits the court's discretion in inmate cases, was not yet in effect when Vance filed his complaint and thus was not pertinent to its decision.

IV. Hearing Transcript

¶ 11 Next, plaintiff argues that the district court erred in requiring him to pay for the preparation of a written transcript of the administrative hearing rather than ordering an audio recording, as requested in his motion to certify the record. We agree.

¶ 12 As pertinent here, C.R.C.P. 106(a)(4)(III) provides that if a C.R.C.P. 106 complaint is accompanied by a motion and proposed order requiring certification of the record, the district court shall order the administrative body to file with the court within a specified time the record "as is identified in the order." *See also* C.R.C.P. 106.5(f) (the CDOC is required to file the certified record). C.R.C.P. 106.5(h), in turn, provides that the "cost of preparation of the record shall initially be paid by the Warden but, upon the filing of the certified record with the Court, the Warden shall immediately deduct the cost of preparation of the record, including the recording, from the inmate's account." *See also* C.R.C.P. 106 (a)(4)(IV) (the "cost of preparing the record shall be advanced by the plaintiff").

¶ 13 In plaintiff's motion to certify the record, he requested that the record include "[a]ll audio tapes from the administrative disciplinary hearing." The district court granted plaintiff's motion to certify the record but ordered a written transcript of the administrative hearing in lieu of an audio recording, stating that "transcripts are more easily reviewable, are a written record of testimony and of evidence, and are less susceptible to errors and of destruction." Plaintiff objected to the court's order and filed a motion seeking to enjoin "the DOC from illegally deducting $107.10 [for the preparation of the hearing transcript] from his in-

mate account." The court denied the motion without comment.

¶ 14 Nothing in C.R.C.P. 106 or 106.5 requires that a written transcript be prepared in order to obtain judicial review. In addition, we are unaware of any case law that requires preparation of a transcript in such a proceeding. *See Almarez v. Carpenter*, 173 Colo. 284, 291–92, 477 P.2d 792, 796 (1970) (noting that a transcript is not an absolute necessity in the reviewing court). Thus, although the lack of a transcript may be inconvenient, *see Earl v. Dist. Court*, 719 P.2d 321, 324 (Colo.1986), an audiotape may provide a sufficient basis upon which to conduct review. *See Schaffer v. Dist. Court*, 719 P.2d 1088, 1090 (Colo.1986) (the court noted that a statement of stipulated facts or a tape recording of an administrative hearing may constitute a suitable simplified record in lieu of a transcript). "A simplified record ... facilitate[s] access to the courts and serve[s] the interests of justice." *Id.* Indeed, C.R.C.P. 106.5(g), concerning "Contents of the Record," conforms to this principle by requiring that only a copy of the audio recording—and not a written transcript—be provided for judicial review: "If any part of the proceeding was recorded, *a copy of the recording* shall be provided." (Emphasis added.)

¶ 15 Therefore, we conclude that the district court erred in requiring plaintiff to pay for the preparation of a written transcript of the disciplinary hearing, especially in light of plaintiff's specific request for "audio tapes" and his objection to the court's substitution of a written transcript for the hearing tape. However, because the transcript has already been prepared, the only available remedy here is for the CDOC to credit plaintiff's inmate account for the cost incurred for the preparation of the hearing transcript.

## V. Disciplinary Conviction

¶ 16 Plaintiff makes various arguments concerning the validity and outcome of his hearing before the disciplinary board. We address and reject these arguments in turn.

### A. Right to Call Witnesses

¶ 17 Plaintiff alleges that he was denied his due process right to call his case manager as a witness and present a defense. We perceive no error.

¶ 18 "An inmate in a disciplinary hearing enjoys only the most basic due process rights...." *Mariani v. Colo. Dep't of Corr.*, 956 P.2d 625, 628 (Colo.App.1997). In a disciplinary proceeding, an inmate is entitled to (1) written notice of the charge twenty-four hours before the hearing; (2) the right to call witnesses and present a defense; and (3) a written statement from the hearing officer setting forth the reasons for the disciplinary action and the evidence relied on. *Wolff v. McDonnell*, 418 U.S. 539, 564–66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

¶ 19 In his reply brief, plaintiff concedes that the CDOC complied with the first and third requirements. Plaintiff argues, however, that the second requirement was not met; namely, that he was denied his right to call his case manager as a witness and present a defense. We disagree.

¶ 20 An inmate's due process right to call witnesses at a prison disciplinary proceeding is not absolute and, instead, must be balanced against institutional needs and objectives. *See Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 812 (10th Cir.2007). This balancing is reflected in the COPD, which gives offenders the right to request witnesses but also provides that the hearing officer may deny such requests in certain circumstances, including proposed witness testimony deemed to be irrelevant. *See* Dep't of Corr. Reg. No. 150–01(IV)(E)(3)(j)(1) (2010).

¶ 21 If a hearing officer denies an inmate's request to call a witness, the hearing officer must document the denial and the reasons in the record. *See* Dep't of Corr. Reg. No. 150–01(IV)(E)(3)(j)(1); *see also Wolff*, 418 U.S. at 566, 94 S.Ct. 2963 (noting that prison officials must have discretion to keep hearings within reasonable limits and that it would be useful to specify reason for refusing to call witnesses "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases").

¶ 22 Here, when plaintiff asked to call his case manager as a witness, the hearing officer asked plaintiff whether the case manager was present at the CI work facility or checkpoint when the incident occurred. Plaintiff stated that the case manager was not present, and the hearing officer responded, "So [the case manager] doesn't have any direct knowledge of what took place at that time in the [work facility]. . . ." Plaintiff disagreed, stating that his case manager would testify that Sanchez had told him that Sanchez "had let [plaintiff] go." The hearing officer explained that such testimony would be hearsay.

¶ 23 Later, the hearing officer stated on the record that he was denying plaintiff's request to call the case manager because he was not present during the incident and therefore his testimony would not be relevant. The hearing officer also stated that the testimony was not permitted because Sanchez testified that he did not give plaintiff permission to leave work and, thus, "to say that . . . Sanchez . . . said to [plaintiff's] case manager he gave [plaintiff] permission to leave . . . would be . . . meaningless."

¶ 24 On appeal, plaintiff asserts that he should have been allowed to call his case manager as a witness because the case manager would have provided the following testimony that would have been "probative of the facts of the incident from which the charges arose": that the incident report was untimely filed; that the incident report indicated that no COPD charges would be filed; that plaintiff's work assessments reflected an excellent performance history and no history of unexcused absences, late arrivals, or early departures; that plaintiff's CI employment contract required "the department to document verbal and written warnings before an inmate may be terminated from his position"; and that "because plaintiff's performance reviews did not indicate work-related problems," he was "improperly terminated from his position." This testimony, however, would not have been relevant to whether plaintiff left work without permission on the day in question.

¶ 25 Plaintiff has not alleged that his case manager's testimony would have impeached Sanchez's testimony. According to plaintiff, his case manager would have testified that Sanchez told him that he had "let [plaintiff] go." There is no dispute, however, that Sanchez permitted plaintiff to pass from one area to another. Rather, the issue is whether plaintiff violated the COPD by leaving work without the permission of his direct supervisor (Hughes). Therefore, the case manager's proposed testimony would not have addressed the basis for the COPD violation.

¶ 26 We note that, because this is not a criminal case, the statement could only serve to impeach Sanchez's testimony and could not be used as substantive evidence. See § 16–10–201, C.R.S.2013 (specifies "criminal trial"). However, even assuming Sanchez could be impeached with his hearsay statement to the case worker, in order to do that, the statement has to be inconsistent with his testimony. See CRE 801; People v. Newton, 940 P.2d 1065, 1068 (Colo.App.1996). The hearsay statement and Sanchez's testimony are consistent—Sanchez allowed plaintiff to leave the work area and to go back to his cell.

¶ 27 We conclude that the hearing officer's determination satisfies the requirements of due process. The hearing officer documented on the record the reasons for the denial of plaintiff's request to call his case manager as a witness—that is, because the case manager was not present during the incident, his testimony would not have been relevant to the disciplinary charge. See Dep't of Corr. Reg. No. 150–01(IV)(E)(3)(j)(1). Furthermore, plaintiff was permitted to call and question other witnesses who had direct knowledge of the incident, including his direct supervisor (Hughes), who filed the incident report, and the supervisor of the work facility (Sanchez), who released plaintiff on the assumption that he had been properly released from work by Hughes.

¶ 28 Accordingly, we conclude the Administrative Head did not abuse his discretion in upholding the hearing officer's decision not to allow plaintiff to call his case manager as a witness.

## B. Incident Report

¶ 29 Plaintiff further argues that the CDOC lacked jurisdiction "to decide the merit[s] and evidence before it," because the incident report, which plaintiff asserts is "a [precursor] to initiating COPD charges," was untimely filed. We disagree.

¶ 30 As relevant here, "[t] he hearing officer or board at each facility should have original and exclusive jurisdiction in all disciplinary matters." Dep't of Corr. Reg. No. 150–01(IV)(E)(1)(d) (2010). Plaintiff cites no legal authority, and we have found none, standing for the proposition that failure to timely file an incident report deprives the CDOC of jurisdiction over a disciplinary proceeding.

¶ 31 To the extent plaintiff is arguing that the notice of charge was deficient based on the alleged untimely filing of the incident report, and thus that his due process rights were violated, we disagree. Due process requires only that an inmate be provided with written notice of the charges against him. See Mariani, 956 P.2d at 628–29. Plaintiff concedes, and we agree, that he received the notice of charge and that the notice was adequate. Therefore, even if we assume that the incident report was untimely filed, it does not rise to the level of a due process violation.

## C. Sufficiency of the Evidence

¶ 32 Last, plaintiff contends that there was insufficient evidence to support the disciplinary conviction. We are not persuaded.

¶ 33 We must uphold the hearing officer's decision if there is "some evidence" in the record to support it. Kodama v. Johnson, 786 P.2d 417, 420 (Colo.1990); Thomas, 117 P.3d at 10; Woolsey v. Colo. Dep't of Corr., 66 P.3d 151, 155 (Colo.App. 2002). " 'Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion [reached by] the disciplinary board.' " Kodama, 786 P.2d at 420 (quoting Superintendent

v. Hill, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)) (emphasis in Kodama ). " 'No competent evidence' means that the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." Ross v. Fire & Police Pension Ass'n, 713 P.2d 1304, 1309 (Colo.1986); see also McCann v. Lettig, 928 P.2d 816, 818 (Colo.App.1996).

¶ 34 In order to satisfy the "some evidence" standard, the evidence is not required to logically preclude any conclusion but the one reached by the administrative body. Hill, 472 U.S. at 457, 105 S.Ct. 2768 (some evidence standard was satisfied where any of three fleeing inmates could have committed assault on fellow inmate); see also Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir.1992) (some evidence standard was satisfied where one of four cellmates could have been the owner of contraband found in cell).

¶ 35 If the evidence is conflicting, the hearing officer's findings are binding on appeal, and we may not substitute our judgment for that of the fact finder. See Stamm v. City & Cnty. of Denver, 856 P.2d 54, 58 (Colo.App.1993); see also Martinez v. Bd. of Commis., 992 P.2d 692, 696–97 (Colo.App. 1999) (the weight and credibility of a witness's testimony are committed to the discretion of the hearing board). Accordingly, we may not set aside the hearing officer's findings "merely because the evidence was conflicting or susceptible of more than one inference." Arndt v. City of Boulder, 895 P.2d 1092, 1095 (Colo.App.1994).

¶ 36 Insofar as plaintiff contends that the district court should have applied a "preponderance of the evidence" standard instead of a "some evidence" standard in reviewing the disciplinary decision, he is incorrect. Although our review in a C.R.C.P. 106.5 action is limited to the decision of the administrative body itself, and not that of the district court, see Morris–Schindler, LLC v. City & Cnty. of Denver, 251 P.3d 1076, 1080 (Colo. App.2010), we nevertheless observe that the district court correctly applied a "some evidence" standard in reviewing the decision under C.R.C.P. 106.5. See Gallegos v. Gar-

*cia,* 155 P.3d 405, 406 (Colo.App.2006); *see also Woolsey,* 66 P.3d at 155.

 ¶ 37 As relevant here, the COPD provides that an inmate commits "Unauthorized Absence" if he "without proper authority" "[d]eparts from any place where he was directed to remain by a DOC employee, contract worker, or volunteer, or facility regulations" or "[i]s away from his assigned area or is found in an area without authorization from a DOC employee, contract worker, or volunteer of his assigned area." Dep't of Corr. Reg. No. 150–01(IV)(D) (Class II Offenses) (30)(b) (2010).

¶ 38 Here, the testimony at the administrative hearing reflects that plaintiff was not granted permission to leave work on the date in question. Hughes testified that there were no "exact assigned hours" for plaintiff's shift, which was contrary to plaintiff's argument that his shift ended at 3:45; that plaintiff left before the work had been completed; and that he did not authorize plaintiff to leave work on November 30, 2011.

¶ 39 Sanchez testified that, when plaintiff indicated to him that he was ready to leave, Sanchez assumed that plaintiff had "completed the work that was expected by his supervisor [Hughes]" and had been "properly relieved." Upon further questioning by the hearing officer, Sanchez confirmed that, when he patted plaintiff down at the checkpoint before releasing him, he was simply "assisting in processing him out of checkpoint." Sanchez stated that "by processing [plaintiff] out," he did not authorize him to leave work for the day.

¶ 40 Because the record contains "some evidence" that plaintiff left work without permission on November 30, 2011, we must uphold the hearing officer's decision finding plaintiff guilty of the charged disciplinary violation. *See Burns v. Exec. Dir.,* 183 P.3d 695, 697 (Colo.App.2008); *see also Gallegos,* 155 P.3d at 406.

### VI. Conclusion

¶ 41 The judgment is affirmed. The order denying plaintiff leave to proceed in forma pauperis is affirmed. The case is remanded to the district court to order the CDOC to credit plaintiff's inmate account for the cost incurred for the preparation of the hearing transcript.

JUDGE WEBB and JUDGE ROMÁN concur.